Present:  Carrico, C.J., Compton, Stephenson, Lacy,
Hassell, and Keenan, JJ., and Whiting, Senior Justice

LORENZO DEMONTE JAMES
                        OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.   Record No. 961294          June 6, 1997

COMMONWEALTH OF VIRGINIA

        FROM THE COURT OF APPEALS OF VIRGINIA

     In this appeal, we consider whether a criminal
defendant was entitled to ask a physician whether a witness,
who had suffered brain injuries, was "capable of lying" at
trial.

     Lorenzo Demonte James was tried before a jury and
convicted of:  first-degree murder, malicious wounding, use
of a firearm in the commission of a murder, and use of a
firearm in the commission of a malicious wounding.  The jury
fixed his punishment as follows:  life imprisonment for the
first-degree murder conviction and sentences totaling 23
years' imprisonment for the remaining convictions.  The
trial court confirmed the jury's verdict and entered
judgment thereon.  The Court of Appeals denied the
defendant's petition for appeal by unpublished order.  We
awarded the defendant an appeal.

     On July 6, 1994, Terrence Hicks and Randall Thomas were
"hanging out" next to Hicks' car which was parked in an
apartment complex parking lot on Jefferson Davis Highway in
Richmond.  Both men were shot some time late that morning.
Hicks died at the scene, and Thomas was taken to the Medical
College of Virginia Hospitals.

Richmond Police Detective C. T. Woody, Jr., questioned Thomas at the hospital five days later. Thomas identified James as the individual who shot him and Hicks. Thomas gave the following version of events to Detective Woody. Thomas, Hicks, and James had driven from the apartment complex to a convenience store to purchase beer. They returned to the apartment complex parking lot, and an argument ensued between James and Hicks. The two men argued because the "music was too loud" and someone had been "selling drugs." Hicks "pulled" a pistol and James left. Hicks then placed the pistol in his car. James returned, armed with two pistols, shot Hicks and Thomas, and then ran away.

During the trial, Thomas gave the following testimony which differs in some respects from the statements he had made to Detective Woody. Thomas and Hicks drove to the apartment complex on the morning of July 6, 1994, to "hang out, [and] drink some beer." James approached Thomas and Hicks and complained about noise. An argument ensued between James and Hicks. Thomas walked alone to a convenience store to purchase beer. When he returned to Hicks' car, which was parked in the apartment complex parking lot, Hicks was seated in the front passenger seat. Thomas entered the car and sat in the rear seat. James, armed with two pistols, approached the car. James entered the car, sat in the driver's seat, shot Hicks in the head, and shot Thomas several times as he tried to flee from the car. Thomas denied that Hicks had a pistol in his car.

Dr. David X. Cifu, medical director of the brain injury rehabilitation program at the Medical College of Virginia Hospitals, treated Thomas for brain injuries he sustained when he was shot. Dr. Cifu was qualified to testify as an expert witness knowledgeable about the subject of brain injury rehabilitation. During his direct examination, Dr. Cifu stated that Thomas sustained certain brain injuries, including "problems with thinking, memory [and] judgment." Dr. Cifu testified that a person, like Thomas, who had sustained traumatic brain injuries, would have problems with acute memory, "which is acute short term memory being what happened the last hours, the last couple of days, immediate recall, recalling what you were just told. In addition you commonly have what's called retrograde amnesia. What that implies is that in the acute period after a brain injury, a couple of weeks to months, it would be very unusual to recall immediate events of the injury, whether it is a car accident [or] gunshot wounds."

Dr. Cifu also testified that Thomas was still in recovery, but "his memory . . . cognitive, and . . . thinking skills are to the point where he is completely aware of his situation, where he is and what is going on. And . . . [Thomas] has had recovery of his immediate memory and probably about 90 percent recovery from his short term memory deficit. So, he is probably again about 90 percent recovered from his thinking deficit . . . ."

The defendant asked Dr. Cifu the following question

during cross-examination:  "Is Mr. Thomas capable of lying today?"  The Commonwealth objected, and the trial court sustained the objection.  The court stated:  "I don't think the doctor can testify as to the truth and veracity of this particular [witness] unless his brain is so damaged or he is so confused that he is incapable of understanding the difference between truth and untruth."

On appeal, James essentially argues that the trial court erred by refusing to permit him to cross-examine Dr. Cifu on the subject whether Thomas was "capable of lying." Continuing, James claims that the trial court's failure to permit him to cross-examine Dr. Cifu on this subject contravened his Sixth Amendment right to confrontation.  We disagree with James.

The Confrontation Clause of the Sixth Amendment of the Constitution of the United States grants a criminal defendant the right to cross-examine witnesses called by the prosecution.  Barker v. Commonwealth, 230 Va. 370, 376, 337 S.E.2d 729, 733 (1985); Shanklin v. Commonwealth, 222 Va. 862, 864, 284 S.E.2d 611, 612 (1981).  "[T]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."  Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986) (quoting Davis v. Alaska, 415 U.S. 308, 315 (1974)).  The Confrontation Clause, however, does not grant a defendant an unlimited right to cross-examination.  Indeed, the Supreme Court has held that "trial judges retain wide latitude insofar as the

Confrontation Clause is concerned to impose reasonable limits on such cross-examination."  Van Arsdall, 475 U.S. at 679.

It is well settled in this Commonwealth that the credibility of witnesses and the weight to be given to their testimony are questions exclusively for the jury.  Barker, 230 Va. at 373, 337 S.E.2d at 732; Coppola v. Commonwealth, 220 Va. 243, 252, 257 S.E.2d 797, 803 (1979), cert. denied, 444 U.S. 1103 (1980); Zirkle v. Commonwealth, 189 Va. 862, 870, 55 S.E.2d 24, 29 (1949); Johnson v. Commonwealth, 142 Va. 639, 640, 128 S.E. 456, 456 (1925).  The settled law of this Commonwealth simply does not permit a defendant to ask a witness to opine whether another witness is "capable of lying."  The finder of fact, in this instance the jury, must determine a witness' veracity.

We hold that James' Confrontation Clause rights were not violated.  The trial court explicitly gave James an opportunity to cross-examine Dr. Cifu on the subject whether Thomas' brain damage affected his ability to distinguish right from wrong.  We note that Thomas took advantage of this opportunity and pursued this line of cross-examination in the presence of the jury.  The trial court's refusal to permit Dr. Cifu to speculate on Thomas' veracity was a reasonable limitation on the scope of that cross-examination.

Accordingly, we will affirm the judgment of the Court of Appeals.

<u>Affirmed</u>.