PRESENT:  Lemons, C.J., Goodwyn, McClanahan, Powell, Kelsey, and McCullough, JJ., and Millette, S.J.

CORDELL LIONEL CARTER

v.  Record No. 160993

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE CLEO E. POWELL
June 22, 2017

FROM THE COURT OF APPEALS OF VIRGINIA

Cordell Lionel Carter ("Carter") was convicted by a jury in the Circuit Court of Amherst County ("trial court") of first-degree murder and use of a firearm in the commission of a felony, in violation of Code §§ 18.2-32 and 18.2-53.1.  On appeal, he argues that the trial court erred by excluding testimony regarding the victim's alleged acts of violence and threats.  He also argues that the trial court erred in refusing to set aside the verdict.  For the following reasons, we will affirm Carter's convictions.

## I.      BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial."  *Scott v. Commonwealth*, 292 Va. 380, 381, 789 S.E.2d 608, 608 (2016).

On January 14, 2014, Jennifer Johnson ("the victim"), was at home with her fourteen and seven-year-old sons.[1]  Carter, with whom the victim had an off-and-on romantic relationship, came to the victim's house and went into her bedroom where she was resting.  From the living room, her fourteen-year-old son heard Carter and the victim "arguing and bickering back and

_____

[1] Carter is the father of the seven-year-old child.

forth." He then heard "something hit the floor. . . like, a boom or something dropped." A few seconds later, Carter walked out of the bedroom, made a comment to the children about an ambulance, and left the residence. Carter was only in the victim's bedroom for two to five minutes.

After Carter left, the victim's fourteen-year old son went into her bedroom, where he found her on the floor, shaking and speaking in "gibberish." He looked for his mother's cell phone to call for help, but could not locate it. The victim's son ran to Sonny Showalter's house about fifty yards away, and called 911. The police arrived eight minutes later, but the victim had died in the interim. The police did not find any firearms at the house, but they did find a .38 shell casing on the bedroom floor.

Through their investigation, the police determined that when the victim was shot, she was standing in front of her bedroom window, directly across from the doorway to the room, at an angle facing toward the right side of the room. The police concluded that the bullet traveled "facing toward[] her at the same direction," and then went through the window at an angle, striking a post on the front porch. Medical Examiner Amy Tharp testified that the victim died from a single bullet wound to her chest. Dr. Tharp concluded that the victim was shot from "an intermediate range . . . within a few feet" because there was no visible soot or burns from use of a firearm on her hands.

The victim's mother, Jessie Monaghan ("Monaghan"), testified that on the night before the shooting, Carter told her that he was going to the victim's house to give her money. According to Carter, Johnson was blackmailing him regarding videos of Carter having sex with Monaghan. During the course of the conversation, Carter told Monaghan that "[e]verything would be okay." Monaghan also spoke with the victim at some point the day prior to the

victim's shooting.[2]

Immediately after the shooting, Carter called Monaghan and told her to get the children from the victim's house because "she was shot" and would be "dead." Carter then called his boss and resigned from his employment. He told his boss "that he did something bad" that would be "on the news."

On the second day of trial, Carter moved for a continuance due to Monaghan's sudden hospitalization. Carter proffered that he intended to call Monaghan who would testify that hours before the shooting the victim stated that Carter "wasn't going to be around long." He asserted that, in light of his self-defense plea, this threat was admissible to show the victim's propensity for violence and that she was the initial aggressor. The trial court held that "even if [Monaghan] was here," the testimony would not be admissible because "the focus in self-defense is what the defendant reasonably feared under the circumstances as they appeared to him at that time." The trial court reasoned that because the threat was never communicated to Carter, "it can't go to whether he reasonably feared."

Showalter testified for the defense. He testified that he did not know whether the victim had a gun and that he never warned Carter to be careful with the victim. Carter then took the stand, testifying on his own behalf. He stated that on the day of the shooting, he went to the victim's house to bring her money. He said that her son answered the door and let him in. The victim came out to the living room and was "hollering and screaming," so Carter and the victim

---

[2] Carter claims that during Monaghan's cross-examination, he attempted to elicit testimony that hours before the shooting the victim said that Carter "wasn't going to be around long." According to Carter, this testimony was excluded by the trial court during a sidebar. While the transcript shows a sidebar at J.A. 68, Carter made no proffer or objection after this sidebar to indicate an objection to any ruling. In fact, after the sidebar, he stated that he planned to recall Monaghan "as [his] own witness later on."

went into the bedroom. Carter testified that he gave the victim $500, but she wanted $1,000. According to Carter, the victim then threatened to kill him and "reached like she had the gun." Carter said he then "hit her hand and her hand went up" and he heard a "pop" and the victim fell against the wall. Carter also testified that he "tried to knock [the gun] out of her hand." He said that the victim fell against the wall and was "standing there" when he left. He did not see any blood and did not think anything was wrong with her. He testified that he believed she was just "acting out." Carter admitted on cross-examination that the victim found sex tapes on his cell phone of him "sleeping with" the victim's sister and mother.

Carter attempted to testify regarding several instances wherein the victim assaulted him or Showalter. The trial court allowed Carter to testify to acts of violence committed by the victim between 2012 and the date of her death. The trial court excluded testimony that the victim stabbed a man ten years earlier, and that she had hit Carter in 2008 or 2009. The trial court also excluded testimony that the victim allegedly broke her mother's jaw in 2013.

In its closing argument, the Commonwealth stated, "[t]here is a saying that says evil triumphs when good men do nothing. Today is your chance to do something. Don't let evil triumph in this case, find [the defendant] guilty of first degree murder." (*See* Commonwealth's Br. Appx. 10.) After the case was submitted to the jury, Carter objected to this statement as purely emotional. Carter did not request a mistrial. However, the trial court found that the Commonwealth's statements were "not sufficient to inflame the jury. . . . So the motions are overruled and your exceptions are noted for the record."

Carter then called Showalter for a proffer. Under oath, Showalter stated that he knew the victim had a gun and that his previous testimony was not true. After the jury returned guilty verdicts, Carter moved for a new trial based on Showalter's proffer. The trial court denied the

4

motion.

Carter appealed to the Court of Appeals, which affirmed his convictions in an unpublished opinion. *Carter v. Commonwealth*, Record No. 2261-14-3, 2016 Va. App. LEXIS 177, at *17 (May 31, 2016) (unpublished). This appeal followed.

## II. ANALYSIS

### A. Excluded Evidence

"[W]e review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to admit evidence absent a finding of abuse of that discretion." *Avent v. Commonwealth*, 279 Va. 175, 197, 688 S.E.2d 244, 256 (2010). "In evaluating whether a trial court abused its discretion, . . . 'we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action.'" *Grattan v. Commonwealth*, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009) (quoting *Beck v. Commonwealth*, 253 Va. 373, 385, 484 S.E.2d 898, 906 (1997)). "The abuse-of-discretion standard [also] includes review to determine that the discretion was not guided by erroneous legal conclusions." *Porter v. Commonwealth*, 276 Va. 203, 260, 661 S.E.2d 415, 445 (2008) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)).

### 1. Threat Evidence

Carter argues that the trial court erred in refusing to admit Monaghan's proffered testimony, offered during the presentation of the Commonwealth's case-in-chief, that the victim told her the day before her death that Monaghan had "better get [her] s*** from another n***** because this n***** ain't going to be around after tonight." He asserts that the testimony was relevant to support his claim of self-defense.

> To establish a claim of self-defense, a defendant must show that he
> reasonably feared death or serious bodily harm at the hands of his

5

> victim. Whether the danger is reasonably apparent is judged from the viewpoint of the defendant at the time of the incident. The defendant must also show that he was in imminent danger of harm, that is, a showing of an overt act or other circumstance that affords an immediate threat to safety.

*Hines v. Commonwealth*, 292 Va. 674, 679, 791 S.E.2d 563, 565 (2016) (citations omitted).

Evidence of a victim's propensity for violence is relevant to determine "who was the aggressor or what was the reasonable apprehension of the defendant for his safety." *Workman v. Commonwealth*, 272 Va. 633, 649, 636 S.E.2d 368, 377 (2006) (citation omitted). "Upon the question of who was the aggressor, the issue is what the victim probably did," and such evidence is admissible even when the defendant is unaware of it. *Id*. (citations omitted).

Assuming, without deciding, that the trial court erred by refusing to admit Monaghan's proffered testimony, we hold the error was harmless. We "will not reverse a trial court for evidentiary errors that were harmless to the ultimate result." *Shifflett v. Commonwealth*, 289 Va. 10, 12, 766 S.E.2d 906, 908 (2015). "Under the harmless error doctrine, if there was 'a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . for any . . . defect, imperfection, or omission in the record, or for any error committed on the trial.'" *Id*. (quoting Code § 8.01-678). "[W]e apply the standard for non-constitutional harmless error, which is that such error is harmless if we can be sure that it did not 'influence the jury' or had only a 'slight effect.'" *Id*. (quoting *Clay v. Commonwealth*, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001)).

Carter and the victim had been having a dispute about the videos of him having sexual relations with other women, including Monaghan. Carter had a discussion with Monaghan regarding the dispute. Recognizing that Monaghan was upset, Carter told her that "[e]verything would be okay." Carter then went to the victim's home where an argument ensued. Upon leaving the victim's home, he made a comment to her children about an ambulance.

6

Immediately after Carter left the house, the victim's cell phone and computer were missing. Carter then called Monaghan and told her to go pick up the children because the victim would "be dead, she was shot." Carter next called his employer and resigned. During that conversation he told his boss "that he did something bad" and that it "would be on the news." He then took the victim's computer into the woods and destroyed it.

The evidence against Carter demonstrated that the bullet traveled "facing toward[]" the victim. The police determined that when the victim was shot she was standing in front of her bedroom window directly across from the doorway to the room. The casing was found in the bedroom and the bullet traveled through a window and struck a post outside.

The medical examiner testified that the victim was shot from "an intermediate range . . . within a few feet." The bullet went through the victim's chest, aorta, both lungs, and through her spinal column which led to instant paralysis. The victim bled to death within a matter of minutes. The medical examiner also testified that there was no visible soot or burns on the victim's hands from firing a gun.

Carter's testimony could not be reconciled with the other evidence in the case. Indeed, Carter's testimony of how the gun discharged changed multiple times and conflicted with the physical evidence presented by the Commonwealth. First, Carter testified that he "hit her hand and her hand went up . . . then [he] heard a pop." Next, he testified that he "tried to knock [the gun] out of her hand." Later he testified that the victim "throwed [sic] her hand up, I seen [sic] [the gun.] I hit her hand up in the air. Her hand came back down, then it went off." Finally, he testified that the victim's "hand was on the gun before my hand was on the gun. . . . I hit her hand up in the air. . . . But her hand evidently was twisted. If it shot her, it was twisted." He further testified that the victim was standing and appeared fine when he left her bedroom.

We can conclude from the record "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Adams v. Commonwealth*, 275 Va. 260, 277-78, 657 S.E.2d 87, 97 (2008); *Clay*, 262 Va. at 260, 546 S.E.2d at 731-32. Carter received a fair trial because the alleged error in refusing to admit Monaghan's proffered testimony was unlikely to sway the jury given the overwhelming evidence of his guilt. Accordingly, such error was harmless.

## 2. Character Evidence

Carter next argues that the trial court erred in refusing to allow him to present evidence of prior acts of violence allegedly committed by the victim. Carter argues that the trial court erred in imposing a time limitation, only allowing testimony of specific acts that occurred since 2012. He also argues that the trial court erred in not allowing evidence that the victim allegedly broke her mother's jaw in 2013. He asserts this evidence was relevant to show the victim's character for violence.

"[W]here an accused adduces evidence that he acted in self-defense, evidence of specific acts is admissible to show the character of the decedent for turbulence and violence, even if the accused is unaware of such character." *Barnes v. Commonwealth*, 214 Va. 24, 25, 197 S.E.2d 189, 190 (1973). Indeed, Virginia Rule of Evidence 2:404 provides that "evidence of a pertinent character trait or acts of violence by the victim of the crime offered by an accused who has adduced evidence of self-defense" is admissible.

> [T]he ultimate issue becomes whether such evidence of prior conduct was sufficiently connected in time and circumstances . . . as to be likely to characterize the victim's conduct toward the defendant. *Randolph[ v. Commonwealth]*, 190 Va. [256,] 265, 56 S.E.2d [226,] 230[ (1949)]. Or stated alternatively, the test is whether the evidence of prior character is "so distant in time as to be void of real probative value in showing present character." 3A Wigmore, Evidence § 928, at 755 (Chadbourn Rev. 1970).

*Barnes*, 214 Va. at 25, 97 S.E.2d at 190.

However, we "will not disturb a trial court's decision to admit evidence absent a finding of abuse of that discretion." *Avent*, 279 Va. at 197, 688 S.E.2d at 256. When a defendant alleges that he acted in self-defense, "the number of specific acts of violence of the . . . victim which might be introduced [is] a matter within the sound discretion of the trial court." *Burford v. Commonwealth*, 179 Va. 752, 767, 20 S.E.2d 509, 515 (1942) (citing *Rasnake v. Commonwealth*, 135 Va. 677, 699-700, 115 S.E. 543, 551 (1923)).

Carter relies on *Barnes* in support of his arguments that the trial court erred. However, *Barnes* differs from the present case in that the court in *Barnes* excluded all of the proffered acts of violence evidence. To the contrary, Carter was allowed to present most of the evidence he asked to present regarding the victim's prior violent conduct. The trial court admitted evidence of the victim's violence directed toward Carter and Showalter for the two years immediately preceding her death. It was well within the trial court's discretion whether to admit or deny additional evidence of the victim's prior violent conduct. The evidence the trial court excluded was either not relevant to the time and/or circumstances surrounding the victim's death. Testimony regarding a stabbing that occurred ten years prior and arose out of the victim's attempt to defend her sister was not relevant to the time or circumstances. Carter also admitted he knew nothing regarding the circumstances of the victim's alleged 2013 breaking of Monaghan's jaw. Therefore, he could offer no evidence as to whether the act was "likely to characterize the victim's conduct toward" him. *Barnes*, 214 Va. at 25, 97 S.E.2d at 190. Accordingly, we hold that the trial court did not abuse its discretion in refusing to allow evidence of these specific violent acts by the victim into evidence.

B.  Motion to Set Aside the Verdict

Carter argues that the trial court erred in refusing to set aside the verdict because of false testimony presented by defense witness Showalter.  However, Carter did not timely proffer Showalter's conflicting testimony nor timely ask for a mistrial after the testimony was proffered.[3]

Here, Carter called Showalter to testify as his own witness.  Carter proceeded to ask Showalter foundational questions, such as his relationship to the victim, whether he appeared for trial the day before as summoned, and where he stayed the night before, all an apparent attempt to establish Showalter as a hostile witness.  During this examination, the Commonwealth objected to the questioning stating, "[h]e's trying to create a hostile environment instead of just asking questions."  The trial court sustained the Commonwealth's objection, stating: "If the responses are evasive or nonresponsive on questions that are material to the case, that's when the issue or the party can be declared an adverse witness."  Carter thereafter responded that he reserved "the right to make a proffer" on the issue of the potential bias of Showalter.  During his testimony, Showalter stated the victim did not have a gun in her house.  Despite the fact that this testimony appeared to be contrary to what he anticipated, Carter did not ask to treat Showalter as an adverse witness in order to attack or clarify his false trial testimony at that time.  *Teleguz v. Commonwealth*, 273 Va. 458, 479, 643 S.E.2d 708, 722 (2007) ("[A] person may be considered a hostile witness if his testimony surprises the party who called the person to testify at trial.").

---

[3] Carter argues, in reliance on *Powell v. Commonwealth*, 133 Va. 741, 112 S.E.2d 657 (1922), that the verdict should be set aside and a new trial granted when it was uncontradicted that a material witness testified falsely at trial.  However, in *Powell*, the conflicting evidence was "after discovered evidence" which is not the case here.  *Id*. at 750, 112 S.E.2d at 659.  Carter was aware of the testimony he sought to elicit and was aware that Showalter's testimony on direct differed from what he expected.

Moreover, Carter waited until the jury retired to deliberate to recall Showalter to elicit a proffer regarding Showalter's alleged bias. When Showalter's proffered testimony contradicted his prior trial testimony, Carter thereafter waited until the jury returned a guilty verdict to move for a new trial based on Showalter's proffered testimony.

We will not consider Carter's argument on appeal that the trial court erred in refusing to set aside the verdict due to Showalter's false testimony because such argument is waived. We have repeatedly held that in order to preserve an issue for appeal a party must make known to the trial court the action which he desires the court to take or his objections to the actions and the grounds therefore "at a point in the proceeding when the trial court is in a position not only to consider the asserted error, but also to rectify the effect of the asserted error." *Scialdone v. Commonwealth*, 279 Va. 422, 437, 689 S.E.2d 716, 724 (2010) (quotation marks and citation omitted); *Maxwell v. Commonwealth*, 287 Va. 258, 267-68, 754 S.E.2d 516, 520-21 (2014) (holding failure to make a timely motion for mistrial waives any error). Here, Carter's motion to set aside the verdict based on Showalter's alleged false testimony came too late. Had Carter raised the issue of Showalter's differing testimony, at the time of the proffer, or earlier in the trial, and made known what action he desired the trial court to take earlier in the trial, the trial judge would have been in a position to address the asserted error prior to the jury returning its verdict. Accordingly, we affirm the judgment of the trial court denying Carter's motion to set aside the verdict.

## C. Commonwealth's Closing Argument

Carter argues that a statement made by the Commonwealth during closing argument was inappropriate. The Commonwealth stated, "[t]here is a saying that says evil triumphs when good men do nothing. Today is your chance to do something. Don't let evil triumph in this case, find

11

[the defendant] guilty of first degree murder." (*See* Commonwealth's Br. Appx. 10.) After the case was submitted to the jury, Carter objected to this statement as purely emotional. At no time did Carter request a mistrial or a cautionary instruction.[4]

"We have repeatedly held that if a defendant wishes to take advantage on appeal of some incident he regards as objectionable enough to warrant a mistrial, he must make his motion timely or else be deemed to have waived his objection." *Yeatts v. Commonwealth*, 242 Va. 121, 137, 410 S.E.2d 254, 264 (1991). "Making a timely motion for mistrial means making the motion 'when the objectionable words were spoken.'" *Id.* (quoting *Reid v. Baumgardner*, 217 Va. 769, 774, 232 S.E.2d 778, 781 (1977)). Having failed to timely raise his objection to the Commonwealth's closing argument, Carter is barred from doing so now on appeal. Rule 5:25; *Maxwell*, 287 Va. at 267-68, 754 S.E.2d at 520-21.

## III. CONCLUSION

For the foregoing reasons, we affirm Carter's convictions for first degree murder and use of a firearm in the commission of first degree murder.

*Affirmed*.

---

[4] The trial court found that the Commonwealth's statements were "not sufficient to inflame the jury. . . . So the motions are overruled and your exceptions are noted for the record."