COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, Chafin and Malveaux
Argued at Salem, Virginia

UNPUBLISHED

LATOYA DENISE JEFFERSON

v.      Record No. 0638-17-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE MARY BENNETT MALVEAUX
MARCH 20, 2018

FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Stacey W. Moreau, Judge

Carlos A. Hutcherson (Hutcherson Law, PLC, on brief), for
appellant.

Robert H. Anderson, III, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Latoya Denise Jefferson ("appellant") was convicted of two counts of felony welfare

fraud, in violation of Code § 63.2-522. On appeal, she argues the trial court erred by: (1) not

permitting her to complete her cross-examination of a witness; (2) denying her motion to strike

because the evidence was insufficient to prove she received overpayments of $200 or more; and

(3) admitting certain evidence during the sentencing phase of her trial. For the reasons that

follow, we affirm appellant's convictions.

I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts [are] stated in the

light most favorable to the Commonwealth, the prevailing party at trial." Scott v.

Commonwealth, 292 Va. 380, 381, 789 S.E.2d 608, 608 (2016).

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

<u>Appellant's Benefits Applications and Benefits Received</u>

During 2015 and 2016, appellant shared a household with her five children and her boyfriend. Appellant received benefits through the Supplemental Nutrition Assistance Program ("SNAP") and fuel assistance through the Pittsylvania County Department of Social Services ("DSS").

In February 2015, appellant completed a renewal application in order to continue receiving SNAP benefits. The application required appellant to disclose her household income, including "money from all jobs," whether "full time, part time, seasonal, temporary, [or] self-employment." Appellant disclosed her income from Citi Trends and her boyfriend's income from Capps Shoes. Appellant did not disclose her income from a job with Frito-Lay that she had held since November 2014.

Sharon Stephens, an eligibility worker with DSS, testified that she processed the renewal application and telephoned appellant to review the document with her. Appellant did not disclose any employment beyond what she had reported in the application. Stephens used the information from the application and the telephone interview to determine the amount of appellant's SNAP benefits.

In September 2015, appellant was required to submit an interim report noting any changes to the information provided in her renewal application. In completing the report, appellant indicated there had been no changes in her household employment or employment income since filing the renewal application in February.

In November 2015, appellant completed a fuel assistance application which required her to list all sources of household income and provide the names of all employers. As in her renewal application, appellant disclosed only Citi Trends and Capps Shoes as employers and sources of employment income.

Appellant completed another renewal application for SNAP benefits in February 2016.[1] She disclosed household income from Citi Trends and Capps Shoes and answered "no" when asked whether anyone in her household had been fired or laid off, quit a job, or reduced their work hours since she applied for benefits.

Sharon Stephens of DSS received the renewal application, ran a check for additional income, and discovered that appellant had held an unreported job since 2014. Stephens telephoned appellant to review the application with her and asked appellant about the undisclosed employment. Appellant told Stephens she was no longer working at that job. A human resources coordinator for Frito-Lay later testified that appellant had worked for the company from November 2014 until February 2016.

Dawn Hankins, DSS's fraud investigator, met with appellant and reviewed with her the 2015 and 2016 renewal applications, the September 2015 interim report, and the November 2015 fuel assistance application. During the meeting, appellant acknowledged reading and understanding the language in the 2015 renewal application which said she could be breaking the law by providing false, incomplete, or incorrect information. Appellant told Hankins she "might have had a part-time job" that started around December 2014, but did not report it in February 2015 because she had not known how long she would be working at Frito-Lay. Appellant also told Hankins she did not think she had to report her Frito-Lay income because it did not exceed the income limits for SNAP benefits. When Hankins asked appellant about her 2016 renewal application, and whether appellant had had any employment or income beyond what she disclosed in that document, appellant replied that she was not working at the additional job when she completed the application. When Hankins pointed out that the application asked whether

---

[1] Appellant dated the renewal application February 28, 2015, but later told DSS's fraud investigator that she must have stated the year incorrectly because "we had just changed over from one year to the next." DSS date-stamped the application as received on March 1, 2016.

anyone in the household had been laid off or fired, quit a job, or gone on reduced hours, appellant stated that she "didn't know she had to put the job there." Hankins told appellant she had failed to disclose her additional employment income in the fuel assistance application, and appellant agreed.

Hankins testified that the more income appellant had earned, the fewer benefits she would have been entitled to receive. She explained that a qualifying applicant receives some deductions from their gross monthly income, and their monthly benefits are then based on that adjusted gross income. Among the deductions appellant qualified for were a standard deduction based on the size of her household, as well as shelter and utility deductions. Hankins testified that appellant also received a 20% earned income deduction from the reported income from Citi Trends and Capps Shoes. She also explained that, as per DSS policy, unreported income is not eligible for the 20% earned income deduction—"[y]ou don't get anything off the top of that [income]."

Using appellant's disclosed income and her pay records from Frito-Lay, Hankins calculated the amount of benefits overpaid to appellant month by month and on a cumulative basis. Hankins calculated that appellant received a total overpayment of SNAP benefits in the amount of $3,417 and a total fuel assistance overpayment of $37.14.[2] During the period covered by appellant's first indictment, from March 1 to August 31, 2015, appellant received $1,900 in SNAP overpayments. During the period covered by appellant's second indictment, from September 1, 2015 to February 29, 2016, appellant received $1,517 in SNAP overpayments.

---

[2] As noted below, Hankins testified at sentencing that an error occurred in the calculation of SNAP benefits due to appellant in March 2015. When Hankins corrected the error, appellant's total SNAP benefits overpayment increased by $18, from $3,399 to $3,417.

<u>Cross-Examination and Motion to Strike</u>

During cross-examination, counsel for appellant asked Hankins what the impact on appellant's benefits payments would have been if appellant had reported her income from Frito-Lay. Hankins replied that if appellant had reported those earnings, they would have been added to the earnings from Citi Trends and Capps Shoes to calculate appellant's gross household income. Appellant would have received deductions from that gross amount, but because appellant would have had more reported income, the amount of her benefits would have decreased. When counsel asked, "[b]ut that number would have been the number that she would have been entitled to," the Commonwealth objected, arguing that appellant's question assumed facts not in evidence and had already been testified about. The trial court sustained the objection, stating that "it's . . . not relevant as to what we're here on today. . . . The allegation is she failed to report it. You're trying to say[,] well, if she had, her benefits would have been reduced but only because of twenty percent. It's irrelevant. It doesn't matter." When counsel for appellant asked whether the trial court was stating that the amount of the benefits overpayment was irrelevant, the court clarified that it was not. However, the court reiterated that "[i]t's a hypothetical that doesn't mean anything. . . . [T]he evidence is that if you don't report [income] then when they recalculate it, you do not get the [20% earned income] benefit. . . . It's a hypothetical that's irrelevant."

At the close of the Commonwealth's case, appellant moved to strike, arguing that the evidence did not establish that the value of the benefits she improperly received was $200 or more. The trial court denied the motion. Appellant was convicted of two counts of felony welfare fraud, in violation of Code § 63.2-522.

<u>Evidence at Sentencing</u>

At the sentencing hearing, Hankins testified that while reviewing her calculations, she discovered there had been an error in calculating appellant's March 2015 SNAP benefits and overpayment. She stated that appellant was eligible to receive a housing deduction that month as well as an adjustment for child support received and that neither the deduction nor the adjustment had been applied. Based upon a recalculation that took those matters into account, Hankins stated that appellant's total overpayment for SNAP benefits increased by $18. The amount of appellant's fuel assistance overpayment remained unchanged.

Appellant did not object to Hankins' testimony, but did object to the Commonwealth's introduction of a one-page document she had prepared which summarized that testimony. The trial court admitted the document over appellant's objection.

Appellant timely appealed her convictions.

## II. ANALYSIS

### A. <u>Cross-Examination</u>

Appellant argues the trial court erred when it did not allow her to finish cross-examining Hankins about the amount of benefits she would have received had she reported her Frito-Lay income. This curtailment of her cross-examination, appellant contends, violated her rights under the Confrontation Clause of the Sixth Amendment.

"[W]e review a trial court's decision to admit or exclude testimony using an abuse of discretion standard." <u>Jin v. Commonwealth</u>, 67 Va. App. 294, 308, 795 S.E.2d 918, 925 (2017) (quoting <u>Commonwealth v. Proffitt</u>, 292 Va. 626, 634, 792 S.E.2d 3, 6 (2016)). "Cross-examination of prosecution witnesses 'is "fundamental to the truth-finding process and is an absolute right guaranteed to an accused by the [C]onfrontation [C]lause of the Sixth Amendment."'" <u>Id.</u> (quoting <u>Maynard v. Commonwealth</u>, 11 Va. App. 437, 444, 399 S.E.2d

635, 639 (1990) (*en banc*)). However, "'while the liberties of the cross-examiner are very great,' they are not unlimited." Scott v. Commonwealth, 18 Va. App. 692, 694, 446 S.E.2d 619, 620 (1994) (quoting Barnard v. Commonwealth, 134 Va. 613, 622, 114 S.E. 563, 565 (1922)). "Indeed, the Supreme Court has held that 'trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination.'" James v. Commonwealth, 254 Va. 95, 98, 487 S.E.2d 205, 207 (1997) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)). Such reasonable limits may be "based on concerns about, among other things, harassment, prejudice, confusion of the issues, . . . or interrogation that is repetitive or only marginally relevant." Jin, 67 Va. App. at 308-09, 795 S.E.2d at 925 (quoting Van Arsdall, 475 U.S. at 679). "The test establishing relevance is not whether the proposed evidence conclusively proves a fact, but whether it has any tendency to establish a fact at issue." Holsapple v. Commonwealth, 39 Va. App. 522, 537, 574 S.E.2d 756, 763 (2003) (*en banc*) (quoting Wise v. Commonwealth, 6 Va. App. 178, 188, 367 S.E.2d 197, 203 (1988)). See also Va. R. Evid. 2:401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence.").

Appellant's argument is without merit. Any testimony by Hankins about what appellant's benefits would have been had she disclosed the income would have been purely hypothetical, and thus irrelevant, since no evidence indicated appellant did disclose that income. Further, the evidence at trial was that, as per DSS policy, appellant was not entitled to a 20% earned income deduction from undisclosed income. Consequently, any testimony by Hankins about the effects of applying that deduction to that income would not have had any tendency to establish the fact in issue, namely, how much appellant received in benefits overpayments. Because appellant's question on cross-examination was irrelevant, we conclude that the trial

court imposed a reasonable limit when it disallowed that question and that doing so did not rise to the level of a violation of appellant's Sixth Amendment right to confrontation. Accordingly, the trial court did not abuse its discretion by disallowing appellant's question on cross-examination.

## B. Sufficiency

Appellant argues the trial court erred in denying her motion to strike, because the evidence was insufficient to prove that she received overpayments of $200 or more, and thus that her offenses were felonies rather than misdemeanors. She maintains that the method DSS used to calculate her overpayments was improper and did not provide the trier of fact with sufficient information to reasonably determine the overpayment amounts.

When considering a challenge to the sufficiency of evidence on appeal, "we review the evidence in the light most favorable to the Commonwealth," the prevailing party at trial, "granting to it all reasonable inferences fairly deducible therefrom." Sierra v. Commonwealth, 59 Va. App. 770, 774, 722 S.E.2d 656, 657 (2012) (quoting Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997)). Further, the Court "discard[s] the evidence of the accused in conflict with that of the Commonwealth." Johnson v. Commonwealth, 53 Va. App. 79, 99, 669 S.E.2d 368, 378 (2008) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)). In conducting our inquiry, "the relevant question is, after reviewing the evidence in the light most favorable to the [Commonwealth], whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63 (2010). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Kelly v. Commonwealth, 41 Va. App. 250, 257-58, 584 S.E.2d 444, 447 (2003) (en banc) (quoting

Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  We do not "substitute our judgment for that of the trier of fact," Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002), and "will reverse only where the trial court's decision is 'plainly wrong or without evidence to support it,'" Calloway v. Commonwealth, 62 Va. App. 253, 261, 746 S.E.2d 72, 76 (2013) (quoting Seaton v. Commonwealth, 42 Va. App. 739, 746, 595 S.E.2d 9, 12 (2004)).

Code § 63.2-522 provides, in pertinent part, that "[w]hoever obtains . . . by means of a willful false statement or representation, . . . public assistance or benefits from other programs . . . to which he is not entitled or who fails to comply with the provisions of [Code] § 63.2-513 is guilty of larceny."  Code § 63.2-513 provides that "[a]ny recipient who knows or reasonably should know that [a] change in [financial] circumstances will materially affect his eligibility for assistance or the amount thereof and willfully fails" to notify DSS of the change "is guilty of a violation of [Code] § 63.2-522."[3]

The evidence at trial, viewed in the light most favorable to the Commonwealth and affording it all reasonable, deducible inferences, showed that appellant received benefits overpayments of $200 or more during each of the periods covered by her two indictments.  DSS's overpayment calculations reflect excess SNAP benefits of $1,900 during the period covered by appellant's first indictment, and $1,517 during the period covered by appellant's second indictment.  Further, DSS's fraud investigator testified that while disclosed income is eligible to receive a 20% earned income deduction for purposes of calculating SNAP benefits, undisclosed income is not eligible to receive that deduction.  Thus, the evidence directly contradicts appellant's argument that her undisclosed income should have been treated as

---

[3] Appellant does not challenge the sufficiency of the evidence that she made willful false statements or representations to obtain benefits she was not entitled to, or that she failed to comply with the reporting requirements of Code § 63.2-513.  She challenges only whether, as charged in her indictments, the benefits she received in violation of Code § 63.2-522 amounted to $200 or more.

disclosed income for purposes of calculating her benefit overpayments.  Since a rational trier of

fact could have found from the evidence that appellant received welfare benefits overpayments

worth $200 or more during each of the indictment periods, the trial court's denial of the motion

to strike was neither plainly wrong nor without evidentiary support.[4]

### C. Evidence at Sentencing

Lastly, appellant argues that the trial court erred when it admitted, during the sentencing

phase, evidence regarding a recalculation of appellant's benefits overpayments.

"The admissibility of evidence is within the broad discretion of the trial court, and a

ruling will not be disturbed on appeal in the absence of an abuse of discretion."  Abdo v.

Commonwealth, 64 Va. App. 468, 473, 769 S.E.2d 677, 679 (2015) (quoting Blain v.

Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)).  Further, "[w]e 'will not

reverse a trial court for evidentiary errors that were harmless to the ultimate result.'"  Carter v.

---

[4] Appellant advances several additional arguments with respect to the sufficiency of the evidence.  She first argues that since neither Code § 63.2-513 nor Code § 63.2-522 specifies whether the offense identified in Code § 63.2-522 constitutes petit or grand larceny, and since penal statutes are to be construed in the light most favorable to defendants, "the charge is limited to a petit larceny."  This argument is without merit.  Where conviction under a statute is made larceny, without differentiation as to grand or petit, it must simply "be read in connection with Code §§ 18.2-95 and 18.2-96 to determine the degree of larceny."  Little v. Commonwealth, 59 Va. App. 725, 730, 722 S.E.2d 317, 319 (2012) (discussing larceny in the context of a conviction for receiving stolen property, in violation of Code § 18.2-108(A), for which a defendant "shall be deemed guilty of larceny").  See also Foster v. Commonwealth, 44 Va. App. 574, 577-78, 606 S.E.2d 518, 519-20 (2004) (reviewing the evolution of larceny at common law and noting that "[t]he term 'larceny' includes both petit and grand grades of the offense").
Appellant further argues that a provision "similar" to Code § 63.2-522—Code § 18.2-186.2—"makes the actions [a]ppellant is accused of . . . misdemeanor[s], without any regard to any amount of overpaid benefits or assistance received."  This argument is without merit.  Code § 18.2-186.2 criminalizes the use of false representations or non-disclosures to obtain housing assistance program benefits.  As such, it is inapposite to the instant case.
Appellant also argues that the evidence at sentencing demonstrates that the overpayment calculations were incorrect and that since the distinction between felony and misdemeanor convictions depends upon those calculations, the Commonwealth failed to prove felony offenses beyond a reasonable doubt.  This argument is also without merit, since the evidence adduced at sentencing affected only the calculation of a single month's SNAP benefits and overpayment and, in fact, increased the total amount of SNAP overpayments appellant received by $18.

Commonwealth, 293 Va. 537, 544, 800 S.E.2d 498, 502 (2017) (quoting Shifflett v. Commonwealth, 289 Va. 10, 12, 766 S.E.2d 906, 908 (2015)).  "Under the harmless error doctrine, if there was 'a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . for any . . . defect, imperfection, or omission in the record, or for any error committed on the trial.'"  Id. at 545, 800 S.E.2d at 502 (quoting Shifflett, 289 Va. at 12, 766 S.E.2d at 908).  See also Code § 8.01-678.  "[W]e apply the standard for non-constitutional harmless error, which is that such error is harmless if we can be sure that it did not 'influence the [trier of fact]' or had only a 'slight effect.'"  Carter, 293 Va. at 545, 800 S.E.2d at 502 (quoting Shifflett, 289 Va. at 12, 766 S.E.2d at 908).

We first note that while appellant assigns error to the trial court for "admitting evidence during the sentencing phase[ ] regarding a recalculation of the alleged overpayment," during sentencing, appellant objected only to the admission of the document that summarized Hankins' recalculations.  Appellant did not object to Hankins' testimony about those recalculations.  "In order to preserve an issue for appeal, 'an objection must be timely made and the grounds stated with specificity.'"  McDuffie v. Commonwealth, 49 Va. App. 170, 177, 638 S.E.2d 139, 142 (2006) (quoting Marlowe v. Commonwealth, 2 Va. App. 619, 621, 347 S.E.2d 167, 168 (1986)).  "[A] litigant who opposes the admission of certain evidence has a duty to explain, contemporaneously, why he contends such evidence should be excluded in order to preserve and challenge that exclusion ruling on appeal."  Creamer v. Commonwealth, 64 Va. App. 185, 195, 767 S.E.2d 226, 231 (2015).  See also Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice.").  Because appellant did not object to the admission of Hankins' testimony, she has not preserved the admission of that testimony as an issue for appellate review.  Thus, we

concern ourselves only with appellant's timely objection to the admission of Hankins' summary document.

Assuming, without deciding, that the trial court erred in admitting Hankins' document during the sentencing phase, we conclude that any such error was harmless. Hankins testified, without objection, to all of the information contained in the document. As the document was merely duplicitous of Hankins' testimonial evidence, its admission could have had no more than a slight effect on the trial court as trier of fact.

### III. CONCLUSION

We hold that the trial court did not abuse its discretion in curtailing cross-examination. Further, the trial court did not err in denying appellant's motion to strike, as the Commonwealth produced sufficient evidence that appellant's benefit overpayments exceeded $200. Finally, any error in the admission of a document during appellant's sentencing hearing was harmless. Thus, we affirm the trial court's judgment finding appellant guilty of two counts of felony welfare fraud, in violation of Code § 63.2-522.

<u>Affirmed.</u>