COURT OF APPEALS OF VIRGINIA

Present:  Judges O'Brien, Causey and Frucci

RHODEAN HAROLQUAN RHODES-HAMLIN

                                                    MEMORANDUM OPINION[*]
v.        Record No. 1299-24-1                            PER CURIAM
                                                     DECEMBER 9, 2025
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr., Judge

(Trevor Jared Robinson, on brief), for appellant.

(Jason S. Miyares, Attorney General; Matthew J. Beyrau, Assistant
Attorney General, on brief), for appellee.


A jury convicted Rhodean Harolquan Rhodes-Hamlin of second-degree murder,

aggravated malicious wounding, and using a firearm to commit those felonies.  By final order

entered on August 15, 2024, the trial court sentenced him to a total of 38 years of incarceration

with 13 years suspended.  On appeal, Rhodes-Hamlin contends that the trial court erred in

denying his motion to strike because he presented "undeniable evidence of self-defense."  For

the following reasons, we affirm.[1]

_____

[*] This opinion is not designated for publication.  See Code § 17.1-413(A).

[1] Having examined the briefs and record in this case, the panel unanimously agrees that
oral argument is unnecessary because "the dispositive issue or issues have been authoritatively
decided, and the appellant has not argued that the case law should be overturned, extended,
modified, or reversed."  See Code § 17.1-403(ii)(b); Rule 5A:27(b).

BACKGROUND[2]

The Commonwealth charged Rhodes-Hamlin with the first-degree murder of Sidney Parker, aggravated malicious wounding of Parker's mother Toya, and two counts of using a firearm in the commission of a felony. The evidence at trial established that, in July 2022, Toya lived in an apartment on Mangrove Avenue in Norfolk with her daughter Shiree Tyson and several other family members. On July 19, 2022, Parker also stayed at the apartment.

That evening, Parker left the apartment. Sometime later, Toya and Tyson heard a commotion outside. Toya looked out the window and saw Parker's girlfriend Latosha Edmonds[3] arguing with Rhodes-Hamlin in the parking lot. Toya then saw Rhodes-Hamlin push Edmonds to the ground.

Toya then went outside; Tyson followed several minutes later. Parker then arrived in the parking lot and told Rhodes-Hamlin that he should not have pushed Edmonds "down like that." Parker and Rhodes-Hamlin argued and got "in each other's face[s]." Parker then pushed Rhodes-Hamlin away.

After Parker shoved Rhodes-Hamlin, Rhodes-Hamlin drew a firearm from his waistband and rapidly fired ten shots. Multiple rounds struck Parker, and he fell to the ground, bleeding profusely. Toya and Tyson ran when they heard the shots, but a bullet hit Toya near her left elbow. Toya collapsed in the apartment doorway. Rhodes-Hamlin fled the scene.

---

[2] On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

[3] Edmonds is referred to as "Latasha," "Tasha," and "Tosha" throughout the transcript.

Police officers and other emergency personnel quickly responded. Despite the efforts of the first responders, Parker died from his injuries. Toya was transported to the hospital, where she underwent surgery to repair fractures in her arm. The bullet remained in her arm, and at the time of trial, Toya continued to experience pain in, and have limited use of, her left arm.

Police investigators recovered ten nine-millimeter cartridge casings from the scene. Forensic analysis determined that all ten casings were fired from the same firearm. The medical examiner testified that Parker was shot six times—in the chest, lung, left side, abdomen, hip, and left hand. She determined that both the shot to the chest and the shot to the lung were fatal. She did not observe any bruising on Parker's face.

Detective Peter Kolb located several surveillance cameras that recorded footage relevant to the shooting. Although no camera captured the shooting on video, a camera a block away from the scene recorded clear audio of the ten gunshots at 10:22 p.m. on July 19, 2022. Rhodes-Hamlin walked past this camera about a minute later.

Detective Kolb arrested Rhodes-Hamlin on July 26, 2022. He did not observe any visible injuries on Rhodes-Hamlin at that time. Rhodes-Hamlin did not contact the police in the week between the shooting and his arrest.

Rhodes-Hamlin testified that he arrived at the apartment complex on Mangrove Avenue sometime on the afternoon of the shooting. He asserted that he and Parker were friends, that he saw him "[l]ike every day," and that they regularly socialized in the apartment complex parking lot.

According to Rhodes-Hamlin's testimony, later that night, he was in the apartment building doorway when he heard Parker and Edmonds arguing near the rear of the building. Parker then left and Edmonds—who Rhodes-Hamlin claimed was intoxicated—approached and began verbally abusing him and "cussing [him] out." Rhodes-Hamlin alleged that this verbal

abuse lasted for approximately 30 minutes.  He claimed that although Edmonds hit him in the chest and head, he did not strike her in return.  He said that Edmonds fell because she was drunk, not because he pushed her.  According to Rhodes-Hamlin, Parker was not there when Edmonds fell.

Parker then returned to the parking lot carrying a beer.  Parker confronted Rhodes-Hamlin aggressively and told Rhodes-Hamlin that he did not have to push Edmonds.  Parker appeared to walk toward the apartment building but "he ran up and ended up sneaking up on me, punching me in [the] eye."  Parker and Rhodes-Hamlin then "scuffle[d]."

During the scuffle, Parker and Rhodes-Hamlin separated.  According to Rhodes-Hamlin, Parker then brought his hand to his hip.  Although Rhodes-Hamlin had not seen Parker with a firearm that evening, he knew that Parker typically carried a gun, as Rhodes-Hamlin himself did.  Rhodes-Hamlin testified that he believed that Parker was "going to shoot" him.  Therefore, Rhodes-Hamlin claimed he grabbed his firearm, "stumbled back," and "just fired."  He stated that he did not aim at Toya, and did not know how many shots he fired because he "wasn't thinking about it."[4]  He confirmed that his firearm was a nine-millimeter gun.

On cross-examination, Rhodes-Hamlin acknowledged that when the police interviewed him after his arrest, he initially denied being present during the shooting and stated that he only owned a .22 caliber firearm.  He also offered to tell the police "who did it."

At the close of all the evidence, Rhodes-Hamlin renewed his motion to strike, arguing that "the defense has substantiated self-defense."  The trial court denied the motion, explaining that the merits of Rhodes-Hamlin's self-defense claim was a question for the jury.  The trial

---

[4] Rhodes-Hamlin's friend Tamara Pettaway testified that she witnessed Edmonds harass Rhodes-Hamlin and then fall from drunkenness.  Pettaway said that Parker accused Rhodes-Hamlin of pushing Edmonds and punched Rhodes-Hamlin.  Pettaway saw Parker and Rhodes-Hamlin scuffling for several minutes.  Pettaway testified that she did not "actually see" Rhodes-Hamlin shoot Parker because "it happened so fast."

court instructed the jury on both justifiable and excusable self-defense.  The jury convicted Rhodes-Hamlin of the lesser-included offense of second-degree murder, as well as aggravated malicious wounding and two counts of using a firearm in the commission of a felony. Rhodes-Hamlin now appeals, contending that the trial court should have granted his motion to strike because he proved that he acted in self-defense.

## ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'"  *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)).  "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'"  *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)).  "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).  "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'"  *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"Self-defense is an affirmative defense to a charge of murder, and in making such a plea, a 'defendant implicitly admits the killing was intentional and assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt in the minds of the jurors.'"  *Jones v. Commonwealth*, 71 Va. App. 70, 86 (2019) (quoting *Commonwealth v. Sands*, 262 Va. 724, 729 (2001)).  "'Whether an accused' meets this threshold 'is a question of fact.'"

*Washington v. Commonwealth*, 75 Va. App. 606, 617 (2022) (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)).

"In order to establish self-defense, a defendant must show that he . . . 'reasonably believed that [he] was in danger of serious bodily harm or death.'" *Id.* (alterations in original) (quoting *Jones*, 71 Va. App. at 86). He must also establish "'that he was in imminent danger of harm' by showing 'an overt act or other circumstance that affords an immediate threat to safety.'" *Jones*, 71 Va. App. at 86 (quoting *Carter v. Commonwealth*, 293 Va. 537, 544 (2017)). "An overt act is an act suggesting present danger which 'afford[s] a reasonable ground for believing there is a design . . . to do some serious bodily harm, and imminent danger of carrying such design into immediate execution.'" *Id.* (alterations in original) (quoting *Sands*, 262 Va. at 729). But "'[b]are fear that a person intends to inflict serious bodily injury on the accused, however well-grounded,' is insufficient" to support a claim of self-defense. *Id.* (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 975 (1977)).

Virginia law recognizes two forms of self-defense: "'self-defense without fault,' referred to as justifiable self-defense, and 'self-defense with fault,' known as excusable self-defense." *Washington*, 75 Va. App. at 617 (quoting *Bell v. Commonwealth*, 66 Va. App. 479, 487 (2016)). Justifiable self-defense "occurs when the accused is '*without any fault on his part in provoking or bringing on the difficulty*.'" *Id.* (quoting *Avent v. Commonwealth*, 279 Va. 175, 199 (2010)). By contrast, excusable self-defense

> occurs when the accused is at "some fault in the first instance in provoking or bringing on the difficulty" but, when attacked, he "retreats as far as possible, announces his desire for peace," and acts "from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm."

*Id.* (quoting *Bell*, 66 Va. App. at 487). Both types of self-defense constitute a complete defense.

Rhodes-Hamlin contends that he "reasonably feared for his safety" after he "avoid[ed] a confrontation with [Edmonds], and then being accosted and assaulted by Sidney." Further, Rhodes-Hamlin claims he saw Parker "reaching for a gun," "was absolutely certain that [Parker] was armed," and "properly defended himself."

We disagree. Rhodes-Hamlin's argument credits his own testimony and frames the evidence in the light most favorable to him. But the jury was "under no obligation to accept" his account. *Covil v. Commonwealth*, 268 Va. 692, 696 (2004). Moreover, on appeal we must view "the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). Toya testified that she saw Rhodes-Hamlin push Edmonds down. Toya and Tyson both testified that Parker shoved Rhodes-Hamlin. In response, Rhodes-Hamlin drew his firearm and rapidly fired ten shots, hitting Parker—who was unarmed—six times and Toya once.

A jury that credited this testimony was entitled to reject Rhodes-Hamlin's assertion that he reasonably believed that he faced imminent danger of death or serious bodily harm because Parker was about to shoot him. Further, if the jury found that Rhodes-Hamlin bore some degree of fault in provoking the altercation, there was no evidence that Rhodes-Hamlin retreated as far as he safely could or made known his desire for peace before he used deadly force. *See Washington*, 75 Va. App. at 617.

In sum, the credibility of the witnesses and the merits of Rhodes-Hamlin's self-defense claim were questions for the jury. As it was entitled to do, the jury concluded that Rhodes-Hamlin did not act in self-defense, and there is no basis for this Court to disturb that determination.

## CONCLUSION

Accordingly, we affirm the trial court's judgment.

*Affirmed.*