PUBLISHED

# *VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **31st** *day of* **March, 2020**.

Quartrez Logan, s/k/a
 Quartrez Rashad Logan, Appellant,

 against      Record No. 1735-18-1
            Circuit Court No. CR18001398-01

Commonwealth of Virginia, Appellee.

Upon a Petition for Rehearing En Banc

Before Chief Judge Decker, Judges Humphreys, Petty, Beales, Huff, O'Brien, Russell, AtLee, Maveaux and Athey

On March 17, 2020 came the appellant, by court-appointed counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on March 3, 2020, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the petition for rehearing *en banc* is granted and the appeal of those issues is reinstated on the docket of this Court. The mandate previously entered herein is stayed pending the decision of the Court *en banc*.

The parties shall file briefs in compliance with the schedule set forth in Rule 5A:35(b). The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter. An electronic version of each brief shall be filed with the Court and served on opposing counsel. In addition, four printed copies of each brief shall be filed. It is further ordered that the appellant shall file an electronic version and four additional copies of the appendix previously filed in this case.[1]

A Copy,
                Teste:

                        Cynthia L. McCoy, Clerk

                        *original order signed by a deputy clerk of the*
                By:     *Court of Appeals of Virginia at the direction*
                        *of the Court*

                        Deputy Clerk

---

[1] The guidelines for filing electronic briefs and appendices can be found at www.courts.state.va.us/online/vaces/resources/guidelines.pdf.

Present:   Judges Beales, Huff and Athey
Argued at Norfolk, Virginia

**PUBLISHED**

QUARTREZ LOGAN, S/K/A
  QUARTREZ RASHAD LOGAN

v.        Record No. 1735-18-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE CLIFFORD L. ATHEY, JR.
MARCH 3, 2020

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
David W. Lannetti, Judge

J. Barry McCracken, Assistant Public Defender, for appellant.

Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Quartrez Logan ("Logan") was convicted in the Norfolk Circuit Court ("trial court") of

attempting to obtain a firearm while subject to a protective order, in violation of Code §§ 18.2-27

and 18.2-308.1:4.  Logan appeals the conviction, assigning as error the trial court's admission

into evidence of:

> [T]he Returns portion of the preliminary protective order . . . where
> [Logan] was denied the opportunity to confront and cross-examine
> the deputy sheriff that had completed the certificate of service
> reflecting that the extension of a protective order had been
> personally served upon [Logan] in violation of [his] right to
> confront witnesses against him as guaranteed by the Sixth and
> Fourteenth Amendments to the United States Constitution.

For the following reasons, we affirm Logan's conviction.

I. BACKGROUND[1]

On July 24, 2017, Sheila Chawlk ("Chawlk") appeared in the Civil Division of the General District Court for the City of Hampton ("Hampton GDC") seeking to extend a preliminary protective order ("PPO") against Logan to January 24, 2018. Logan did not appear at that hearing. Hampton GDC granted the extension to January 24, 2018, ordered a full hearing on January 24, 2018, and further ordered that Logan and Chawlk be served with notice of the extension and subpoenas for their appearance at the full hearing scheduled for January 24, 2018. According to the service returns sections of the PPO extension, Chawlk and Logan both received personal service of the extension and the January 24, 2018 hearing date the following day, on July 25, 2017. On July 31, 2017, Logan attempted to purchase two firearms from Superior Pawn and Guns ("Superior").

Logan was subsequently indicted for making a materially false statement on a criminal history consent form to obtain a firearm, in violation of Code § 18.2-308.2:2., and the misdemeanor charge of attempting to purchase a firearm on July 31, 2017 while being subject to a protective order, in violation of Code §§ 18.2-27 and 18.2-308.1:4.

At the trial, Michael Billingsley ("Billingsley") testified that he was working for Superior on July 31, 2017, when Logan entered the store to buy two firearms, a Ruger .38 and a Diamond Back 9mm. Billingsley advised Logan that he needed to complete two forms: a state transaction record ("SP-65") and a federal transaction record ("ATF 4473"), which Logan filled out in Billingsley's presence.

On the SP-65, Logan represented that he was not subject to a protective order. Form SP-65 directed applicants to "[s]ee Important Notice 2" on the back of the form, which advised

---

[1] Pursuant to familiar appellate principles, the evidence is summarized in the light most favorable to the Commonwealth, the prevailing party at trial. Gerald v. Commonwealth, 295 Va. 469, 472 (2018).

- 2 -

that it is unlawful under Code § 18.2-308.1:4 to buy any firearm while subject to a protective order. On the ATF 4473, Logan again represented that he was not subject to a protective order. The Commonwealth introduced both forms into evidence without objection.

Superior forwarded the completed forms to the Virginia State Police ("VSP") before declining to sell the firearms to Logan based upon VSP verification that Logan was, in fact, subject to a protective order.

Senior Trooper Walden ("Walden") scheduled an interview with Logan for September 18, 2017; Logan, however, did not appear. Walden tried to schedule another appointment with Logan, but Logan stated that he preferred to meet after September 27, 2017, because he had to appear in court regarding a protective order. Walden and Logan finally met on October 3, 2017.

At the meeting, Walden advised Logan of his Miranda rights—which Logan confirmed that he understood—and Logan agreed to speak with Walden. Walden asked Logan whether he remembered attempting to buy the firearms from Superior and showed Logan the forms that he completed and signed. After viewing the forms, Logan identified them as the same forms he completed and identified the signatures as his own. Walden then asked Logan, "do you remember the protective order?" Logan responded that he did remember it; however, he claimed that he thought the protective order only lasted for two days.

Walden confronted Logan with the fact that the protective order had been personally served on him six days before he tried to buy the firearms by showing him the statements in the return of service.[2] Logan claimed that he never received personal service. Logan added that he

---

[2] The statements in the return of service were on the second page (or reverse side) of the order. That page is silent on the order being an extension, but there is small print on the first page next to a box indicating that it is an extension. The print is similar to the rest of the small print on the first page, which is labeled "PRELIMINARY PROTECTIVE ORDER."

"never knew she went back and had it extended." The Commonwealth offered a certified copy of the PPO containing the service returns into evidence.

Logan objected to the admission of this document into evidence on both hearsay and Fifth Amendment grounds,[3] arguing that "information contained within the document is hearsay and [Logan] ha[d] the right to confront [the serving deputy] that created that particular content." The Commonwealth responded that the PPO had been "produced by the [c]ourt," "filed with the [c]ourt," and was "an official order of the [c]ourt." The trial court recognized the certified copy of the PPO as a "valid court record" and accepted it "as if it were the original;" accordingly, the trial court overruled Logan's objection. The trial court ruled that the exhibit was admissible under "an exception to the Hearsay Rule."[4]

At the conclusion of the bench trial, the trial court found Logan not guilty of making a materially false statement on a criminal history consent form to obtain a firearm, in violation of Code § 18.2-308.2:2, but found Logan guilty of attempting to obtain a firearm while subject to a protective order, in violation of Code §§ 18.2-27 and 18.2-308.1:4. The trial court sentenced Logan to six (6) months in jail, suspending three (3) months conditioned upon Logan's good behavior. This appeal followed.

## II. STANDARD OF REVIEW

We review whether the admission of evidence violated the right of confrontation and "whether a particular category of proffered evidence is testimonial hearsay" *de novo*, Cody v. Commonwealth, 68 Va. App. 638, 658 (2018) (quoting Holloman v. Commonwealth, 65 Va. App. 147, 170 (2015)), but "we do not substitute our judgment for that of the trial court" in

---

[3] Based on the context, counsel for Logan meant the Sixth Amendment instead of the Fifth.

[4] Logan conceded at oral argument that the statements in the return of service were admissible under this exception.

considering discretionary matters, such as witness credibility, <u>Carter v. Commonwealth</u>, 293 Va. 537, 543 (2017).  Regarding discretionary matters, "we consider only whether the record fairly supports the trial court's action."  <u>Id.</u> (quoting <u>Grattan v. Commonwealth</u>, 278 Va. 602, 620 (2009)).  We must "consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial."  <u>Hairston v. Commonwealth</u>, 67 Va. App. 552, 560 (2017).  This requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."  <u>Parks v. Commonwealth</u>, 221 Va. 492, 498 (1980) (emphasis and citation omitted).

### III. ANALYSIS

#### A. <u>Testimonial Statements and the Right of Confrontation</u>

The Sixth and Fourteenth Amendments only guarantee the right to confrontation when the out-of-court statement a declarant makes against an accused is "testimonial."  <u>Melendez-Diaz v. Massachusetts</u>, 557 U.S. 305, 324 (2009).  "A statement intended to bear witness against the accused is testimonial."  <u>Mooney v. Commonwealth</u>, 297 Va. 434, 439 (2019).  If the statement is testimonial, two requirements must be satisfied to respect the right of confrontation; first, the witness must be unavailable, and second, the criminal defendant must have had a prior opportunity to cross-examine the witness.  <u>Crawford v. Washington</u>, 541 U.S. 36, 53-54 (2004); <u>Dickens v. Commonwealth</u>, 52 Va. App. 412, 418 (2008).

Logan objected that he had no opportunity to cross-examine the deputy who created the statements in the service returns portion of the PPO; accordingly, he contends that his right to confrontation was violated.  Therefore, resolving this matter turns upon whether statements in the return of service on a protective order are testimonial.  If they are, Logan's right to

confrontation was violated when the deputy was not at trial. If they are not, Logan did not have a right of confrontation.

B. <u>Whether Service Returns are Testimonial is an Issue of First Impression in Virginia</u>

Because this is an issue of first impression in Virginia,[5] we examine controlling decisions, which have applied the primary purpose test in discerning the difference between statements that are testimonial and statements that are not testimonial. First articulated in <u>Davis v. Washington</u>, 547 U.S. 813, 822 (2006), the Court inquired whether the primary purpose of the statement was "to establish or prove past events potentially relevant to later criminal prosecution." The test has been refined case-by-case since the Court decided <u>Davis</u>.

In <u>Melendez-Diaz</u>, 557 U.S. at 321, which Logan relies upon, the Court considered whether statements examining narcotics in a certificate of analysis were testimonial. In that case, the government argued that the statements were not testimonial because a certificate of analysis is an official record. In finding them testimonial, the Court reasoned:

> Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial.

<u>Id.</u> at 324. The Court therefore acknowledged that a primary purpose of administering government affairs removes a statement from the reach of the Confrontation Clause. Although the Court explained in <u>Melendez-Diaz</u> that affidavits may fall within the "core class of 'testimonial' statements," the Court never declared that all affidavits are testimonial *per se*. <u>Id.</u>

---

[5] This Court has found in an unpublished opinion that statements in a return of service have an administrative purpose and are, therefore, not testimonial. <u>See</u> <u>Koroshev v. Commonwealth</u>, No. 1235-13-4, at *7-9, 7 (Va. Ct. App. Nov. 12, 2014) (finding that "[e]ven if the evidence had been unclear that appellant had actual notice, the December 28, 2012 order, including the JDR court's handwritten notations and the return of service completed by the deputy, is not testimonial in nature and was therefore admissible"). That opinion, however, has no precedential value. Rule 5A:1(f).

at 310.  Citing affidavits and other forms of testimony as examples, the Court was explicitly concerned with "*ex parte* in-court testimony or its functional equivalent"—not labels.  See id. (continuing the inquiry into the primary purpose for which the statement was created despite finding the statement an affidavit).

Applying the primary purpose test in Melendez-Diaz, the Court reasoned that those particular affidavits—certificates analyzing narcotics—were testimonial because they were made in anticipation of criminal prosecution to certify that a substance was cocaine.  In fact, the Court found that "the *sole purpose* of the affidavits was to provide 'prima facie evidence of the composition, quality, and the net weight' of the analyzed substance."  Id. at 311 (emphasis added; internal citation omitted).  Thus, contrary to Logan's argument, the status of a statement as an affidavit is not controlling.

On brief, Logan further omitted the Court's relevant—and more recent—discussion in Michigan v. Bryant, 562 U.S. 344 (2011).  In Bryant, the Court acknowledged that though the reliability of the statement does not obviate the right of confrontation, reliability under traditional hearsay rules is nonetheless relevant in determining whether a statement is testimonial.  Id. at 358-60.  As the Court stated, the goal of the Confrontation Clause is to ensure the reliability of evidence.  Id.

In Sanders v. Commonwealth, 282 Va. 154, 165-67 (2011), the Supreme Court of Virginia applied the rationale articulated in Michigan v. Bryant, finding that statements in a medical report did not offend the rationale underlying the Confrontation Clause despite the statements serving "dual purposes," which included furthering a criminal investigation.  The Sanders Court emphasized that circumstances existing at the time of the statement's creation controlled:  "The fact that the Commonwealth [later] sought to use the [statements] in a criminal prosecution does not change [the medical report's] nontestimonial character."  Id. at 167.

In fact, when a statement is not created for the primary purpose of a criminal prosecution, maintained independent of any request from a prosecutor for use of the statement at trial, and limited to memorializing non-accusatory facts, the statement is not testimonial. See id. at 165-66 (finding statements in a medical report prepared primarily for diagnostic or treatment purposes and, therefore, not testimonial despite the report also furthering potential prosecution when the doctor "work[ed] with law enforcement and other investigative agencies," received the referral from an investigative agency, and "recorded [the exams] on video . . . suggest[ing] that th[e] videos could be turned over to the Commonwealth for prosecutorial purposes"); Crawford v. Commonwealth, 281 Va. 84, 98 (2011) (finding that an affidavit seeking a protective order was subject to the Confrontation Clause because the affidavit was accusatory and described "violent, criminal acts" that relied upon the victim's memory of "past events that had taken place days, weeks, and even months previously—the very purpose of which was to 'establish or prove past events potentially relevant to later criminal prosecution'"); Walker v. Commonwealth, 281 Va. 227, 230-31 (2011) (finding statements the Commonwealth later used to prove value in a "blue book," which professionals in the automobile industry use to establish a vehicle's approximate market value, not testimonial when they were "not accusatory" and "compilers of the 'blue book' . . . did not prepare the book for the purpose of assisting the Commonwealth in securing his conviction"); Jasper v. Commonwealth, 49 Va. App. 749, 756 (2007) (finding that statements in a driving transcript from the DMV offered as evidence supporting the accused's violation of Code § 46.2-391 were not testimonial because they were maintained independent of any litigation and were neither accusatory nor did they offend the rationale underlying the Confrontation Clause).

We therefore hold that statements contained in service returns on protective orders are not testimonial. Here, the deputy did not create the statements for the primary purpose of a

criminal prosecution as the statements were maintained independent of any request from a prosecutor for the use of the statements at trial and were limited to memorializing non-accusatory facts pursuant to the deputy's ministerial duty.

The primary purpose in creating the statements was not to prove past events potentially relevant to later prosecution. The return, which indicates that service was completed along with notations of the date, manner of service, and the person served, did not document past events potentially relevant to later prosecution but were contemporaneously created in the process of serving the order.

Even if the statements did reflect past events—that is, even if the deputy failed to make the statements contemporaneously—they were not created primarily to prove past events potentially relevant to later prosecution. Instead, the statements merely documented the deputy's compliance with his statutory duty to serve the PPO.

In Crawford v. Commonwealth, which the dissent cites extensively, the Supreme Court of Virginia considered an affidavit made by a petitioner who had earlier applied to obtain a preliminary protective order against Crawford, her estranged husband. The affidavit, part of which was introduced at Crawford's trial for his later abduction, rape, and murder of her, described criminal acts already committed by Crawford that the victim used to get the preliminary protective order. The Supreme Court of Virginia found the affidavit to be testimonial in nature and, therefore, subject to the Confrontation Clause. 281 Va. at 99. However, an affidavit alleging actions of violence that are crimes in themselves and are used to obtain a protective order is clearly different from the situation in the case before us, where the form at issue is simply a return of service, which was merely an indication by a deputy sheriff that he had served notice of the protective order on Logan.

Code §§ 19.2-152.9(B) and 8.01-325 govern the service of the protective order at issue. Code § 19.2-152.9(B) requires the immediate personal service of the protective order on the subject of the protective order to facilitate prompt notice.[6] Effecting this service requires the server—here, a deputy—to make statements pursuant to Code § 8.01-325: "The process shall state thereon the date and manner of service and the name of the party served." No evidence suggests that at the time and date of service, a reasonable deputy could have anticipated Logan later attempting to purchase firearms and a subsequent prosecution.

A protective order only becomes effective upon service. Code § 19.2-152.9(C) states that "[t]he preliminary order is effective upon personal service on the alleged perpetrator." The primary purpose of the return of service is to show that it has been served on the subject of that protective order and is, therefore, in effect.

Thus, the statements at issue here were primarily created to comply with statutory provisions and, therefore, enable the entity to administer its affairs—a non-prosecutorial purpose. Furthermore, the statements do not offend the rationale underlying the Confrontation Clause when they were not accusatory and were maintained independent of any request from a prosecutor for the use of the statements at a trial. A sworn officer performing a ministerial duty created the statements on the document, which was maintained by a court in the performance of its official duties.

Because the statements were, therefore, not created primarily to prove past events potentially relevant to later prosecution, the challenged statements were not testimonial.

---

[6] Code § 19.2-152.9(B) requires the entering court to communicate the subject's identifying information "forthwith" to law enforcement officers, who must similarly serve the subject "forthwith" and personally after forwarding the information to the Virginia Criminal Information Network ("VCIN"), which further disseminates the subject's information.

- 10 -

Accordingly, Logan had no right to confront the deputy who made them, and the trial court did not err in admitting the challenged statements into evidence.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

Huff, J., dissenting,

A preliminary protective order is not effective until service has been made. Code § 19.2-152.9(C). Accordingly, proof of service of a preliminary protective order is required before one can be convicted of violating it. Here the return of service was the only evidence addressing the statutory requirement of service and the due process requirement of notice. A reasonable deputy preparing the return of service would realize the facts he recorded were "potentially relevant to later criminal prosecution." Crawford v. Commonwealth, 281 Va. 84, 98 (2011). Thus, the return of service was testimonial hearsay and inadmissible under the Confrontation Clause because the deputy did not testify. Therefore, I respectfully dissent.

Appellant was convicted under Code §§ 18.2-27 and 18.2-308.1:4 of attempting to purchase a firearm "while the [preliminary protective] order [was] in effect." Without proof of service of the protective order, appellant's conviction would lack the necessary foundation of proof, *viz.* that a preliminary protective order was in effect.

In the instant case, the Commonwealth, over appellant's objection, offered the written certification of a deputy sheriff as proof of service of the protective order. Appellant had no opportunity to confront the deputy's assertion. Without the deputy's testimony that service of the protective order was made on appellant there would have been no evidence of a protective order being in effect. The most fundamental principles of due process require notice of the existence of a court order before one can be convicted of violating the order. Tsai v. Commonwealth, 51 Va. App. 649, 654 (2008); see also Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 313 (1950) ("Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice . . . .").

The Supreme Court of the United States has set the applicable standard. "[C]ertificates . . . [that accomplish] precisely what a witness does on direct examination" constitute testimonial statements that are subject to the confrontation rights guaranteed by the Sixth Amendment to the United States Constitution. Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310-11 (2009) (quoting Davis v. Washington, 547 U.S. 813, 830 (2006)); see also Crawford, 281 Va. at 97 (holding that hearsay evidence is "testimonial" when it is "*ex parte* in-court testimony or its functional equivalent" (quoting Crawford v. Washington, 541 U.S. 36, 51 (2004))). A hearsay statement is the functional equivalent of in-court testimony when, at the time the statement was made, it was "made for the purpose of 'establish[ing] or prov[ing] past events *potentially relevant* to later criminal prosecution.'" Crawford, 281 Va. at 98 (alteration in original) (quoting Davis, 547 U.S. at 822).

A hearsay statement is testimonial when two things are true: One, the purpose of the statement is to record events. Two, at the time the statement is made, a reasonable declarant would understand that the recorded events are "*potentially relevant* to later criminal prosecution." Id. Specifically, a statement is testimonial when the statement is "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. (quoting Crawford, 541 U.S. at 52).

In Crawford v. Commonwealth, a victim sought a preliminary protective order by swearing out an affidavit detailing her husband's abuse. During his trial for her murder, the trial court permitted the Commonwealth to admit that affidavit into evidence. The Supreme Court held the trial court erred in doing so. Although the Court noted that the "immediate purpose of the affidavit was to obtain a protective order in a civil case," the Court examined the affidavit and concluded it was a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." Id. at 99 (quoting Melendez-Diaz, 557 U.S. at 310). Thus, it concluded

- 13 -

that because "the facts recited were . . . 'potentially relevant to later criminal prosecution'" the affidavit was testimonial. Id. at 98-99 (quoting Davis, 547 U.S. at 822).

The Supreme Court's decision in Sanders v. Commonwealth, 282 Va. 154 (2011), is instructive. In Sanders, the trial court admitted testimony by the Commonwealth's medical expert that she had diagnosed the sexual assault victim with chlamydia based on the results received from a lab test. The defendant contended the lab results were testimonial hearsay. The Court disagreed. Id. at 167-68. Because a lab may need to run a chlamydia test for "any number of typically non-prosecutorial reasons," the Court noted there was no reason the lab technician would understand the lab test results to be relevant in a criminal trial. Additionally, although the medical expert had a forensic role when examining the victim, she "also provided medical diagnosis and treatment to" the victim. Id. at 166. Because the medical expert had no knowledge that the defendant had chlamydia when she ordered the victim's lab test, the Court concluded the test was ordered solely for treatment without any reason to believe the results would be used in trial. Id. Thus, the evidence was non-testimonial because both the medical expert and lab technician had no reason to believe it would be used for trial.

Thus, when a statement is made for the purpose of recording an event and the recorded event reasonably could be understood by the declarant to be relevant to a later criminal prosecution, the statement is testimonial. This remains true, even if the record was not made explicitly for the purpose of use in a criminal trial. The record of service of the preliminary protective order satisfies both of these conditions.

First, the very purpose of a certificate of service is to establish that service has occurred—i.e. recording the event of service—and, therefore, satisfying the notice requirement of due process in both the civil protective order proceeding and any later proceedings for

violating the order.  See Tsai, 51 Va. App. at 654 (explaining due process is satisfied by actual notice).

Second, the deputy had ample reason to expect the record of service to be relevant in a later criminal trial.  Printed on the protective order, just below the return of service, is a warning of criminal penalties for violating the order:

> Pursuant to Code of Virginia § 18.2-308.1:4, Respondent shall not purchase or transport any firearm while this order is in effect.  If Respondent has a concealed handgun permit, Respondent must immediately surrender that permit to the court issuing this order.  *If Respondent violates the conditions of this order, Respondent may be sentenced to jail and/or ordered to pay a fine.*

(Emphasis added).  Given that warning, and the bedrock position notice has as an essential element of due process, a reasonable deputy serving the order would understand the necessity of proving the respondent had been served with the order in any later criminal proceedings.  Cf. Melendez-Diaz, 557 U.S. at 311 ("We can safely assume that the analysts were aware of the affidavits' evidentiary purpose, since that purpose—as stated in the relevant state-law provision—was reprinted on the affidavits themselves.").

The circumstances of this case demonstrate the crucial need for confrontation.  Even viewed in the light most favorable to the Commonwealth, the facts in the case at bar raise substantial question about whether service was made.  The petitioner for the protective order testified, without contradiction, that she was never served with the order even though the return of service says she was.  On the face of the return, the deputy purports to have served both the petitioner and appellant at the same time and only one minute before he filed the return with the court.  Not only is that facially suspicious, but the petitioner for the order stated, without contradiction, that she was not with appellant or in the court at the time of purported service.  Moreover, there is nothing in the record, other than the return itself, to contradict the statement appellant made to the trooper that he had not received service when he attempted to purchase a

- 15 -

firearm.  Appellant should have had the opportunity to challenge the return of service using the method "the Constitution actually prescribes: confrontation."  Crawford, 541 U.S. at 68-69.  Appellant did not have that opportunity, and his conviction should be reversed.  Therefore, I respectfully dissent.