COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Fulton, Friedman and Raphael
Argued at Lexington, Virginia


KYLE BRADLEY MOORE
                                                    MEMORANDUM OPINION* BY
v.        Record No. 0724-22-3                      JUDGE FRANK K. FRIEDMAN
                                                         JUNE 20, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Stacey W. Moreau, Judge

James C. Martin (Martin & Martin Law Firm, on briefs), for
appellant.

Justin B. Hill, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Kyle Moore was found guilty of one count of strangulation following a jury trial in

Pittsylvania County.  He was sentenced to five years in prison, with four years and six months

suspended.  He now appeals, raising numerous assignments of error—that the trial judge and

local Commonwealth's Attorney's office should have been recused, that the trial court

erroneously admitted evidence, that the trial court erred in qualifying a witness as an expert, that

the trial court erred in denying a mistrial and refusing to properly instruct the jury, and that the

evidence was insufficient to support a finding of strangulation.

For the reasons below, we affirm the trial court's rulings.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413.

BACKGROUND

I.  Defense Requests for Recusal of Judge and Prosecutors

On June 21, 2021, a Pittsylvania County grand jury indicted Moore for strangulation of Sarah Katherine Moore ("Sarah Katherine") on December 28, 2016.  Moore and Sarah Katherine married in 2014.  At the time of Moore's trial upon the indictment in 2022, he and Sarah Katherine were separated and she was seeking a divorce.

Moore moved for the sitting judge in the matter, Judge Stacey W. Moreau, to recuse herself.  Moore asserted that until recently, the judge's former law firm was named Williams, Light, and Moreau; the firm was founded by the judge's father, Williams, and the judge was married to the named partner, Moreau, until his death many years earlier.  John Light, a partner in the firm, was representing Sarah Katherine in the contentious divorce proceedings against Moore.  Moore alleged that Judge Moreau's son, a law school student, had interned with the firm, where Judge Moreau's brother also practiced.  Commenting upon a jury's prior acquittal of Moore of strangulation from an incident that occurred with Sarah Katherine in 2019, Sarah Katherine's father told the prosecutor that they needed a "win" in the present case to strengthen her position in the divorce.  Moore maintained that Judge Moreau should recuse herself because of her close ties with Light and his law firm, as well as Sarah Katherine's parents' beliefs that the civil and criminal matters were intertwined.

Judge Moreau denied the motion to recuse herself.  At the time of the ruling, it had been almost nineteen years since the judge had practiced at the firm.  Judge Moreau noted that Light was not involved in the criminal matter, Light's firm was not named for her, and there was no conflict of interest.

Moore also moved to recuse the entire Office of the Commonwealth's Attorney because members of the office were potential fact witnesses to Sarah Katherine's father's statement about

needing a "win." The Commonwealth offered to stipulate to the statement at trial. The trial court found that no conflict of interest then existed and denied the motion to recuse the Commonwealth's Attorney's office.

## II. Facts of Present Conviction

On December 28, 2016, Moore and Sarah Katherine lived in Pittsylvania County. The couple argued that day, and Moore consumed alcohol after the argument. That night, Moore entered their infant son's bedroom while Sarah Katherine was changing the child's diaper. Moore was "all angry," and grabbed Sarah Katherine by the throat with one hand. He lifted her off the ground by the neck and held her against the closet doors.

Afterward, Sarah Katherine saw that blood was "pouring" from her nose down her shirt. Moore handed Sarah Katherine baby wipes to absorb the blood. After she calmed down, Sarah Katherine said she was "getting out of here." Moore shut the door and would not let her leave. After a period of time, Moore apologized and said he would "never touch [her] again." Sarah Katherine did not call the police about the incident because she loved Moore. The next day, however, Sarah Katherine took a photograph of the bloody baby wipes.

Sarah Katherine did not report this incident to the police until May 2020.

## III. Evidence at Trial

At trial, the Commonwealth introduced evidence of other incidents of domestic violence. In March 2019, after another argument, Moore took the older two children from the house while Sarah Katherine was taking a bath. Moore left on a "four-wheeler" vehicle and drove to his parents' property nearby. Sarah Katherine knew that Moore had been drinking, so she feared for

the children's safety. She testified that she located Moore's vehicle, put the children into her car, and took the key from the four-wheeler; she testified that afterward Moore chased her.[1]

After the March 2019 incident, Sarah Katherine reported that she had been strangled to her mother; Sarah Katherine indicated that it was not the first time Moore had strangled her. She did not call the police because she feared Moore would leave her.

In January 2020, Moore threw Sarah Katherine "up against the bar" and caused her a concussion.[2] She called her parents, but not the police, about the incident. She did not want Moore to get into trouble with the police. She went to the hospital at her father's insistence because she was in pain and nauseated. Sarah Katherine was reluctant to leave Moore because they had "built a life together," but she realized "something had to change." She decided that if Moore "touched [her] again" she would leave him. The trial court overruled Moore's objection to photographs of Sarah Katherine's injuries from the January 2020 incident.

On May 16, 2020, Moore went to bed while there were guests at his house; Moore had been drinking all day. After the guests left, Sarah Katherine entered the bedroom, put her hand on Moore's shoulder, and said she was coming to bed. Moore shoved her against the wall and demanded his phone. Sarah Katherine threw the phone and hit Moore in the face. Moore chased

---

[1] Moore objected to Sarah Katherine's testimony about the March 2019 incident because he had been tried and acquitted for charges arising from it. The Commonwealth argued that the testimony was admissible to demonstrate Sarah Katherine's state of mind from the December 2016 incident until the time she reported it to the police in May 2020. In response, Moore moved for a mistrial because of the prejudicial nature of the testimony about what occurred in March 2019. The trial court denied Moore's motion for a mistrial, but Sarah Katherine did not describe further details about the March 2019 incident.

[2] At Moore's request, the trial court instructed the jury that evidence concerning the January 2020 incident was relevant only to Sarah Katherine's state of mind.

her to the bathroom, where he slammed her head against a glass shelf, shattering it. In the garage, Moore broke both of their phones to pieces, then left.[3]

After Sarah Katherine contacted one of her brothers, both of them and her cousin, Jennifer Atkinson, came to Sarah Katherine's house. Henry Leggett, Sarah Katherine's brother, testified that the house was "just a wreck from what had happened" and that she was "cut up, bruised up." Sarah Katherine's other brother, Bennett Leggett, surreptitiously recorded the conversation that occurred at her home.[4] Atkinson contacted the police.

#### IV. The Issue of Delayed Reporting

On May 21, 2020, Sarah Katherine reported the December 2016 strangling incident to the police. That same day, Sarah Katherine and her family hired Light to obtain a protective order for her against Moore.

A cornerstone of Moore's defense was that Sarah Katherine had not reported the alleged 2016 strangulation for several years. He argued that these charges arose after she contacted a lawyer about a divorce, and were part of a plan to gain an advantage in the domestic relations litigation. He challenged her credibility on this basis; the Commonwealth countered that Sarah Katherine's "state of mind"—her desire to keep the family together and not get the father of her children in trouble—explained the delay until she reached a breaking point. The trial court admitted the evidence of the prior incidents to explain the timeline and context of events with

---

[3] The trial court overruled Moore's objection to photographs of Sarah Katherine's injuries and the damage to the bathroom and the phones that Moore caused on May 16, 2020.

[4] The trial court admitted the recording over Moore's relevancy and hearsay objections. The court instructed the jury:

> [T]he statements that are being made are not being offered for the
> truth of the matter, so they're not evidence as to what she's saying
> is true, it is being offered only to demonstrate the declarant and in
> this case it's Sarah Katherine, state of mind as with regard to why
> she's not reporting . . . .

respect to Sarah Katherine's "state of mind"; the court gave the jury an instruction that the evidence could only be considered for the limited purpose of "state of mind."

The Commonwealth also called Sandy Dawson, an outreach prevention specialist at the Southside Survivor Response Center with fourteen years of experience in counseling victims of domestic violence, to testify as an expert witness in "victimology" and the pattern of "female victim responses to domestic assault and abuse." Moore objected to Dawson's qualification as an expert witness, arguing that she was not "licensed" or "certified" and that Dawson had not spoken with Sarah Katherine and was "just being asked to make generalized statements based upon her training and experience." The trial court overruled this objection, finding that Dawson had specialized knowledge that would assist the trier of fact. Dawson opined that it was uncommon for a female victim of domestic violence to leave the relationship after the first instance of abuse. She stated that many victims blame themselves for the abuse and do not flee because they believe that the situation will improve. Dawson further stated that victims who had minor children with their abusers tended to remain in the relationship.

Testifying on his own behalf, Moore admitted that he and Sarah Katherine had a heated argument that involved "pushing and shoving and some hollering" on December 28, 2016. He denied that he put his hand around her neck and lifted her up or that he strangled her. On cross-examination, Moore admitted that Sarah Katherine had a bloody nose that night.

ANALYSIS

I. Recusal of Trial Judge

Moore asserts that the trial judge erred in denying the motion to recuse herself. "[A] judge must diligently avoid not only impropriety but a reasonable appearance of impropriety as well." *Billips v. Commonwealth*, 48 Va. App. 278, 291 (2006) (quoting *Davis v. Commonwealth*, 21 Va. App. 587, 591 (1996)), *rev'd on other grounds*, 274 Va. 805 (2007). "The question . . .

- 6 -

'whether a trial judge should recuse himself or herself is measured by whether he or she harbors [or reasonably appears to harbor] "such bias or prejudice as would deny the defendant a fair trial."'" *Id.* at 291-92 (quoting *Welsh v. Commonwealth*, 14 Va. App. 300, 314 (1992)). "[T]he party moving for recusal of a judge has the burden of proving the judge's bias or prejudice." *Commonwealth v. Jackson*, 267 Va. 226, 229 (2004).

"Decisions regarding a judge's impartiality are to be made by the judge in the exercise of his or her discretion and will be reversed on appeal only upon a finding that the court abused its discretion in deciding the question." *Smith v. Commonwealth*, 41 Va. App. 704, 715 (2003) (quoting *Scott v. Rutherfoord*, 30 Va. App. 176, 189 (1999)). "[W]hether a trial judge should recuse himself or herself is . . . a matter left to the reasonable discretion of the trial court." *Farren v. Commonwealth*, 30 Va. App. 234, 239 (1999) (quoting *Broady v. Commonwealth*, 16 Va. App. 281, 287 (1993)). "In exercising h[er] discretion in this regard, the judge must be guided not only by the true state of h[er] impartiality, but also by the public perception of h[er] fairness, in order that public confidence in the integrity of the judiciary may be maintained." *Stamper v. Commonwealth*, 228 Va. 707, 714 (1985).

Under the Canons of Judicial Conduct, "[a] judge must recuse himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." Canon of Judicial Conduct 1(D)(1). Such proceedings may include those where:

> the judge is cognizant of a personal bias or prejudice concerning an issue, a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding; [or]
>
>  . . . .
>
> a lawyer with whom the judge previously practiced law personally and substantially participated in the matter as a lawyer while associated with the judge . . . .

Canon of Judicial Conduct 1(D)(1)(a), (c). Additionally,

> [t]he fact that a lawyer in a proceeding is affiliated with a law firm or government agency with which a member of the judge's family is affiliated does not of itself disqualify the judge. Under appropriate circumstances, the fact that the judge's impartiality might reasonably be questioned or that the relative is known by the judge to have an interest in the law firm or governmental agency that could be substantially affected by the outcome of the proceeding may require the judge's recusal.

Canon of Judicial Conduct 1(D)(8). Moore points to John Light's representation of Sarah Katherine in her divorce case in arguing that Judge Moreau erred by failing to recuse herself. Moore does not allege that Judge Moreau had an actual conflict of interest; instead, he argues that "[t]he problem is the appearance of impropriety in these particular circumstances." Moore also acknowledges that Judge Moreau "could take John Light's cases but chooses not to do so."

Moore has failed to show that Judge Moreau had a personal bias or prejudice in this case. He also did not show that John Light "personally and substantially participated in the matter as a lawyer while associated with the judge." At the time of the ruling, Judge Moreau had been on the bench for almost nineteen years. While Light represented Sarah Katherine in her divorce proceedings, Light was not involved in the criminal case at issue in this appeal. Moreover, Moore himself agrees that Judge Moreau "could take" a case that Light was handling. Under these circumstances, Judge Moreau's denial of Moore's motion to recuse was not an abuse of discretion.

II. Recusal of Prosecutor

Moore next asserts that the trial court erred in denying his motion to recuse the local Commonwealth's Attorney's office. On appeal, this Court reviews a trial court's refusal to recuse the Office of the Commonwealth's Attorney for an abuse of discretion. *See Fisher v. Commonwealth*, 16 Va. App. 447, 456 (1993).

Moore argues that the local Commonwealth's Attorney's office should have been recused from this case because several attorneys in that office were potential fact witnesses—they had

heard Sarah Katherine's father comment that a "win" in the criminal case was needed to help bolster the divorce and custody proceedings against Moore. However, the Commonwealth agreed to stipulate that the comments had been made, thus negating the need to call the attorneys as witnesses, and Moore failed to make a showing that disqualification of the prosecutor or the Commonwealth's Attorney's office would have been required under Rule 3.7 of the Rules of Professional Conduct.[5] Under these circumstances, the trial court's refusal to recuse the local prosecutors' office was not an abuse of discretion.

### III. Admission of Evidence

"[W]e review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and . . . will not disturb a trial court's decision to admit evidence absent a finding of abuse of that discretion." *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021) (first alteration in original) (quoting *Avent v. Commonwealth*, 279 Va. 175, 197 (2010)). "In evaluating whether a trial court abused its discretion, . . . we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." *Id.* (quoting *Carter v. Commonwealth*, 293 Va. 537, 543 (2017)). "The abuse-of-discretion standard [also] includes review to determine that the discretion was not guided by erroneous legal conclusions." *Id.* (alteration in original) (quoting *Carter*, 293 Va. at 543-44).

Unless otherwise prohibited, "[a]ll relevant evidence is admissible[.]" Va. R. Evid. 2:402(a). "'Relevant evidence' means evidence having any tendency to make the existence of

---

[5] This rule does not place an absolute bar on an attorney appearing as a witness. Under Rule 3.7(c), an attorney may continue their representation even if another attorney in their firm "is likely to be called as" a witness, subject to the rules against conflicts of interest. Similarly, under Rule 3.7(b), an attorney may continue their representation even after learning they may be called as a witness "other than on behalf of the client," until it becomes "apparent that the testimony" may be prejudicial to that client.

any fact in issue more probable or less probable than it would be without the evidence." Va. R.

Evid. 2:401. "The scope of relevant evidence in Virginia is quite broad, as '[e]very fact,

however remote or insignificant, that tends to establish the probability or improbability of a fact

in issue is relevant.'" *Commonwealth v. Proffitt*, 292 Va. 626, 634 (2016) (alteration in original)

(quoting *Virginia Elec. & Power Co. v. Dungee*, 258 Va. 235, 260 (1999)).

### a. Other Bad Acts

Moore assigns error to the admission into evidence of "prior bad act[6] allegations of

strangulation and domestic abuse, where the prejudice thereof outweighed their probative value."

Under Virginia Rule of Evidence 2:404(b),

> Except as provided in Rule 2:413 or by statute, evidence of other
> crimes, wrongs, or acts is generally not admissible to prove the
> character trait of a person in order to show that the person acted in
> conformity therewith. However, if the legitimate probative value
> of such proof outweighs its incidental prejudice, such evidence is
> admissible if it tends to prove any relevant fact pertaining to the
> offense charged, such as where it is relevant to show motive,
> opportunity, intent, preparation, plan, knowledge, identity, absence
> of mistake, accident, or if they are part of a common scheme or
> plan.

"[T]he list of acceptable uses found in Rule of Evidence 2:404(b) is not exclusive."

*Lambert v. Commonwealth*, 70 Va. App. 740, 750 (2019). Instead, "Virginia law 'follows an

"inclusionary approach" to the uncharged misconduct doctrine by admitting such evidence "if

relevant, for any purpose other than to show a mere propensity or disposition on the part of the

defendant to commit the crime.""" *Id.* (quoting *Castillo v. Commonwealth*, 70 Va. App. 394,

---

[6] We note that the evidence at issue concerned incidents occurring in March 2019, January 2020, and May 2020. Appellant was being tried for an incident occurring in December 2016. Thus, the contested evidence is more accurately described as "other bad acts" rather than "prior bad acts."

415-16 (2019)).  However, under Rule of Evidence 2:403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.[7]

Here, Moore was being tried for a December 2016 strangulation.  The trial court admitted evidence of other incidents of alleged domestic violence occurring in March 2019, January 2020, and May 2020, ruling at a pretrial motion *in limine* that evidence of those other assaults would be admissible "for explaining timeline and context" so long as the Commonwealth laid a proper foundation for the evidence.

During trial, the court restricted the March 2019 evidence to show the timing of Sarah Katherine's reporting of the abuse to her family.  The court allowed Sarah Katherine to testify regarding the January 2020 incident, finding that it was "admissible and relevant with regard to state of mind," and instructed the jury to consider that testimony only "with regard to state of mind."  The Commonwealth introduced photographs of Sarah Katherine's injuries from the January 2020 incident, and the court admitted them "with regard to just the effect on her mindset at that time."  Sarah Katherine also testified regarding the May 2020 incident, and the Commonwealth introduced photographs of her injuries from that incident over Moore's objection.  The court admitted those photographs "with regard to state of mind."

Unnecessarily cumulative evidence is not allowed under Rule 2:403.  However, here we find that the evidence was not "needlessly cumulative."  Va. R. Evid. 2:403.  Instead, the evidence of Moore's other acts of domestic violence was used appropriately, with limiting instructions to the jury.  In fact, not only did the trial court limit the evidence as it was introduced at trial, it also gave a jury instruction that this evidence could be considered "as evidence of Sarah Katherine Leggett Moore's state of mind as it relates to the timing of reporting."  We

---

[7] Appellant relied only on Rule 2:403 in his briefs.

presume that, when a cautionary instruction is given to the jury, the jury follows that instruction. *Lambert*, 70 Va. App. at 752.

The evidence of Moore's other bad acts was limited to explaining the timing of Sarah Katherine's reporting of the abuse, as well as her state of mind throughout her marriage. While the evidence was clearly prejudicial to Moore, the limitations placed on the evidence meant that it was not *unfairly* prejudicial. Under the balancing test of Rule 2:403, "[t]he circuit court did not have to find that the [evidence was] not prejudicial; it only had to find that [its] probative value to the issues in the case was not substantially outweighed by a danger of unfair prejudice to [the defendant]." *Fields v. Commonwealth*, 73 Va. App. 652, 673 (2021).

The evidence of Moore's violent behavior toward Sarah Katherine in 2019 and 2020 was admissible. It was relevant under Rule 2:404(b) to show the relationship between the parties and to explain Sarah Katherine's long delay in reporting the December 2016 incident. Sarah Katherine's state of mind and her delay in reporting were made relevant by Moore's arguments that the delay made Sarah Katherine's testimony less credible.[8] The trial court properly limited the jury's consideration of this evidence only to show Sarah Katherine's state of mind during this time period, thus avoiding exclusion under Rule 2:403. We find that, given the limiting instructions to the jury and our presumption that the jury followed those instructions, the admission of this other bad acts evidence was not an abuse of discretion.

### b. Audio Recording

Moore next argues that the trial court erred in admitting an audio recording of Sarah Katherine speaking to her brother after the May 2020 incident. The audio, which was recorded

---

[8] At trial, Moore noted that Sarah Katherine did not report the 2016 strangulation to the police until she had met with an attorney, and he argued that she reported the strangulation because "she was looking for some advantage in a custody, visitation and divorce scenario involving property." He argued that the timing of her reporting was "a plan" and "not a coincidence," and he expressed a hope that the jurors had not "fall[en] off a turnip truck."

without Sarah Katherine's knowledge, contains her detailed description of the manner in which Moore had assaulted her that night. Sarah Katherine also spoke about how difficult it would be to leave Moore since the couple shared three children, and she cited her religious beliefs as one reason she had not left the relationship. On appeal, Moore alleges that this recording "was irrelevant and was hearsay not within an exception."

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801. Here, the audio recording was not entered into evidence to show the truth of what Sarah Katherine said; instead, the jury was instructed to consider the recording only insofar as it showed Sarah Katherine's state of mind as to why she did not report Moore's abuse or leave the marriage. Specifically, the trial judge held: "It's coming in under the state of mind exception. It's not going to be offered for the truth of what was being said but as to the circumstances and state of mind of the individual making the statements."

Rule of Evidence 2:803(3) allows for the admission of

> [a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of the declarant's will.

Rule 2:803 provides a list of exceptions to the general rule against the admission of hearsay evidence, including to show the declarant's state of mind. Here, as the trial court noted, the audio recording was not offered for the truth of the matter asserted. The recording was relevant to explain the delay in Sarah Katherine's reporting of the abuse, and it was not error to admit it into evidence. *See Bryant v. Commonwealth*, 39 Va. App. 465, 473 (2002) ("[U]nless a statement is offered to show its truth, the out-of-court statement is not subject to the rule against hearsay and is admissible if relevant.").

c. Photographs

Finally, Moore argues that the trial court erred "in admitting photographs . . . which were irrelevant to state of mind or otherwise."[9] The Commonwealth introduced photographs from the January and May 2020 incidents.

The Commonwealth explained that it was introducing the photographs from January 2020

> to show the extent to which [Sarah Katherine] was injured, which is relevant to her state of mind and what's going on in January. It's important for the jury to understand that if she was injured to this extent and still holding fast to her belief that she needed to stay in her marriage and didn't want her husband to get in trouble, it, it all supports and corroborates her explanation for why she didn't leave.

The judge admitted those photographs and allowed Sarah Katherine to testify about the injuries depicted in those photos "with regard to just the effect on her mindset at that time." Similarly, the photographs from the May 2020 incident were allowed by the trial court "as noted previously with regard to state of mind and circumstantial evidence."

The trial court did not abuse its discretion in ruling that the photos were relevant, and therefore admissible under Rules 2:401 and 2:402, to show why Sarah Katherine was reluctant to report Moore's abuse, as well as the reasons for her ultimately deciding to come forward. The photos also are relevant to explain this timeline of events. "The term 'unfair prejudice' refers to the tendency of some proof to inflame the passions of the trier of fact, or to invite decision based

---

[9] Moore's original assignment of error addressed "photographs from the other strangulation case." Moore's "other strangulation case" stemmed from the March 2019 incident; however, no photographs from that incident were introduced at trial. Moore requested to amend his assignment of error to delete the reference to "the other strangulation case." On brief, he addresses only the photographs contained in Commonwealth's Exhibit 2 (showing Sarah Katherine's injuries from the January 2020 incident) and does not assign error to the photographs contained in Commonwealth's Exhibit 3 (depicting the aftermath of the May 2020 incident). As the same principles apply to the photographs in both of the Commonwealth's exhibits, these procedural issues do not affect the outcome of our analysis.

upon a factor unrelated to the elements of the claims and defenses in the pending case." *Howard v. Commonwealth*, 74 Va. App. 739, 756 (2022) (quoting *Lee v. Spoden*, 290 Va. 235, 251 (2015)). The photos here were used in a limited and appropriate manner to address relevant issues in the case—to help explain Sarah Katherine's delay in reporting, which was a central basis of Moore's credibility claims against her. The photos are consistent with and relevant to the Commonwealth's position that her delay related to her desire to preserve her marriage and to avoid legal trouble for her husband—until she reached a breaking point when the incidents continued and escalated.

## IV. Qualification of Expert

Moore next asserts that it was error for the trial court to qualify Sandy Dawson as an expert witness. "The admission of expert testimony is committed to the sound discretion of the trial judge, and we will reverse a trial court's decision only where that court has abused its discretion." *Brown v. Corbin*, 244 Va. 528, 531 (1992). To qualify as an expert, a witness "needs only to have a degree of knowledge of a subject matter beyond that of persons of common intelligence and ordinary experience so that the witness' opinion will have value in assisting the trier of fact in understanding the evidence or determining a fact in issue." *Kilby v. Commonwealth*, 52 Va. App. 397, 410 (2008) (quoting *Conley v. Commonwealth*, 273 Va. 554, 560 (2007)); *see also* Va. R. Evid. 2:702(a)(ii). "An expert witness may acquire the requisite knowledge of a subject matter through experience and observation in a variety of ways, including participation in a vocation, without formal training or education." *Kilby*, 52 Va. App. at 410 (quoting *Conley*, 273 Va. at 560). We will not reverse a trial court's decision to admit testimony of an expert "unless it plainly appears that the witness was not qualified." *Id.* (quoting *Conley*, 273 Va. at 560).

Under Rule of Evidence 2:702, expert testimony is admissible in a criminal proceeding if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," the witness is "qualified as an expert by knowledge, skill, experience, training, or education," and "the court finds that the subject matter is beyond the knowledge and experience of ordinary persons, such that the jury needs expert opinion in order to comprehend the subject matter, form an intelligent opinion, and draw its conclusions."

Moore objected to the qualification of Dawson as an expert witness, arguing: "I don't think she's licensed, I don't think she's certified. And I, I think that counselors mostly are certified or licensed in the state of Virginia." However, the trial court found that Dawson had "specialized knowledge" that would "assist the trier of fact." The court also found that Dawson's knowledge was in "a specialized area in which not the average individual would know." Dawson had spent fourteen years working with victims of domestic violence and had completed many hours of training and education on this subject. While Dawson was not licensed by the state as a counselor, nor did she testify to having any other state licensures, no such license is required by Rule 2:702. Dawson had knowledge and experience in a specialized field, and the trial court did not abuse its discretion in qualifying her as an expert witness.

## V. Motion for Mistrial

Moore moved for a mistrial after Sarah Katherine's testimony regarding the March 2019 incident. *See supra*, n.1. The trial court overruled his motion, noted that her testimony had previously been ruled admissible during a pretrial motion *in limine*, and declined to instruct the jury to ignore her description of March 2019. At the close of the Commonwealth's evidence, Moore asked the trial court to reconsider his motion, arguing "that what we've done today is spend a large part of the afternoon dealing with state of mind evidence that has done nothing but

try to prejudice my client, and I believe that the only remedy would be to declare a mistrial and grant him a new trial." The court denied this request.

Moore now argues that the "trial court erred in denying the motion for a mistrial and refusing to fully instruct the jury to disregard references which were the rehashing of the other strangulation charge on which a jury had acquitted [Moore]."

"The decision whether to grant a motion for mistrial lies within a trial court's exercise of discretion." *Spence v. Commonwealth*, 60 Va. App. 355, 364 (2012) (quoting *Blanton v. Commonwealth*, 280 Va. 447, 455 (2010)). "When a motion for mistrial is made, based upon an allegedly prejudicial event, the trial court must make an initial factual determination, in the light of all the circumstances of the case, whether the defendant's rights are so indelibly prejudiced as to necessitate a new trial." *Id.* "Unless we can say that the trial court's determination was wrong as a matter of law, we will not disturb its judgment on appeal." *Id.*

The trial court's denial of Moore's motion for a mistrial was not error. The evidence of Moore's other bad acts was limited to consideration of Sarah Katherine's state of mind over the years that the abuse occurred, and it was offered to explain why she did not report Moore's abuse to the police until years after it had started. The testimony was also tempered by an appropriate limiting instruction. Because the evidence of Moore's other bad acts was properly admitted, the trial court's denial of the motion for a mistrial was not error.

## VI. Sufficiency of the Evidence

Finally, Moore argues that both the jury and the trial court erred in finding sufficient evidence to support his conviction. "On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal,

is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

There was clearly sufficient evidence to support the strangulation conviction. Sarah Katherine testified that on the day in question, Moore grabbed her by the neck, lifted her off the ground, and choked her until she could not breathe. She testified that she urinated on herself and had a severe bloody nose when she "came to" after the choking. This testimony was corroborated by the photograph of the bloody baby wipes. It was also corroborated by Moore's own testimony admitting to a physical altercation that evening and agreeing that he gave Sarah Katherine the wipes to clean up her nosebleed. Moore also testified that in 2019, he told Sarah Katherine's father that he had previously strangled Sarah Katherine and that this statement was about the strangulation at issue in this appeal.

The judgment of the trial court was not plainly wrong nor without evidence to support it. We affirm Moore's conviction for strangulation.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*